[Crim. No. 1528. First Appellate District, Division One.—June 5, 1929.]

THE PE'OPLE, Respondent, v. HUMBERT FALLAI, Appellant.

William F. Herron for Appellant.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

KNIGHT, J.—Appellant, having been convicted of robbery in the second degree, has appealed from the judgment of conviction and the order denying his motion for a new trial. One of the several grounds urged for reversal is that the trial court erred in allowing the information to be amended at the commencement of the trial.

Before amendment the information read as follows: " . . . Humbert Fallai is accused by the District Attorney of the said County of Alameda . . . of the crime of felony, to wit, robbery, in that on or about the 4th day of March, A. D. 1928, at the said County of Alameda, State of California, he *robbed* John J. Fitzgerald of one gold watch and chain, one revolver, one pair of handcuffs and $14 more or less, lawful money of the United States, and the said Humbert Fallai was then and there armed with a deadly weapon." (Italics ours.) Appellant did not demur to the information, but at the commencement of the trial and after the district attorney had finished his opening statement to the jury, objected to any evidence being received and asked that the action be dismissed upon the ground that the information did not charge a public offense. The particular objection made was that because of the use of the word "robbed" in the place of the technical language of the code defining the crime of robbery, the information entirely failed to state a public offense. In ruling upon the objection the trial court indicated that in the absence of a demurrer the information was probably legally sufficient, but stated that the word "robbed" was merely the expression of an opinion and that therefore the information should be amended. Whereupon, pursuant to the authority granted by section 1008 of the Penal Code, the information was amended by striking

out the word "robbed" and inserting in lieu thereof the following: "willfully, unlawfully and feloniously and by means of force and fear, and against the will of one John J. Fitzgerald, did take, steal and carry away from the person and immediate presence of the said John J. Fitzgerald," the personal property hereinabove described. etc.

Appellant now contends that the amendment was one of substance and not of form, and therefore was violative of appellant's constitutional rights; and that if said section 1008 be construed as permitting such an amendment it is, to that extent, unconstitutional. Respondent takes the position that prior to the amendment the information was legally sufficient to meet the requirements of the present statute, and that consequently the questions as to the form of the amendment and the constitutionality of the code section permitting the same are immaterial. We are of the opinion that respondent's position must be sustained. The short form of information authorized by the 1927 amendment to section 951 of the Penal Code is as follows: "(Title of the court). The district attorney of the County of ..... hereby accuses A. B. of a felony (or misdemeanor), to-wit: (giving the name of the crime, as murder, burglary, etc.) in that on or about a certain date (stating it) in the county of ......, State of California, he (here insert statement of the act or omission, as for example 'murdered C. D.')''; and in connection therewith section 952 of the said code provides that in charging an offense the information shall be sufficient if it contains in substance a statement that the accused has committed some public offense therein specified, that such statement may be made in ordinary and concise language without any technical averments, and may be in the words of the enactment describing the offense or in any words sufficient to give the accused notice of the offense of which he is charged. The code defines robbery to be "the felonious taking of personal property in the possession of another from his person or immediate presence, and against his will, accompanied by means of force or fear"; and in its relation to the law the word "robbed" is defined by Webster to mean: "To take personal property in the possession of another from his person or his presence feloniously and against his will by violence or by putting him in fear." It

would appear, therefore, in view of the foregoing definitions, that the word "robbed" as it is used in the administration of the criminal laws has a fixed and well-defined meaning, and that being so, it would be wholly unreasonable to hold, we think, that appellant did not know what was intended when he was charged with having "robbed John J. Fitzgerald of one gold watch" and the other personal property above mentioned. As said in *People* v. *Campbell*, 89 Cal. App. 646 [265 Pac. 364]: "Much of the time of the courts has been consumed in the consideration of technical objections to pleadings in criminal cases, yet it is probable that few judges are able to recall a single case in which the defendant was actually in the slightest doubt as to the crime with which he was charged. Modern legislation is endeavoring to cut the inextricable Gordian knot by which the trial of criminal cases has been so long fettered, and the courts ought not to thwart that laudable effort by an adherence to mere technical precedents which regard form rather than substance." In the case of *People* v. *Lopez*, 90 Cal. 569 [27 Pac. 427], the meaning of the word "steal" as used in the charging part of an information was called into question, and the court said: "The word 'steal' as here used, has, as will be hereafter shown, a fixed and well defined meaning, and is perhaps in its common, every day use and general acceptance, as well understood as any word in the English language. . . . Therefore, to contend that the defendant, who must be presumed to be a person of common understanding, did not know what was intended when he was charged by information with stealing another man's horse, is simply preposterous." It would seem that the language just quoted applies with equal force to the word "robbed" as here used. Appellant points out that aside from the criminal law, for instance in the scriptures and in the works of certain famous authors from which he quotes, the word "robbed" is used without criminal signification; but the answer to the argument appellant makes in that behalf is that we are here dealing with its meaning only in the legal sense.

The sufficiency of the evidence is also challenged. The main facts established by the prosecution which support the verdict were as follows: Fitzgerald, a police of-

ficer, while walking home from a theater about 9:30 o'clock at night, being at the time off duty and dressed in civilian clothes, was "held up" and robbed by two men on 36th Street, Oakland. According to Fitzgerald's testimony, the men approached in an automobile (which afterward proved to be stolen) and when close to him they turned suddenly toward the curb and stopped. One of them alighted and pointing a pistol at him commanded him to throw up his hands. The robber then placed the muzzle of the pistol against Fitzgerald's body and called to his companion to relieve Fitzgerald of his valuables. The second robber then got out of the automobile and while emptying Fitzgerald's pockets was recognized by Fitzgerald as being a frequenter of a dance-hall located in the district patroled by Fitzgerald, and whom he afterward identified as appellant. After relieving Fitzgerald of his valuables he was told to "beat it up the street," but instead he followed the robbers to the automobile, asking for the return of his spectacles; and in doing so was able to observe them further and to obtain the number of the license plate on their automobile. A few days later Fitzgerald was shown pictures of two men, one of whom was appellant, and he immediately identified him as being the robber who had rifled his pockets. The pictures were left with Fitzgerald and kept in his possession for several months thereafter. The robbery occurred on March 4, 1928, and the following June appellant was arrested in San Francisco. Within a day or two thereafter, and while no one else was present except police officers, Fitzgerald identified appellant as being one of the robbers, and positive identification was again made at the trial.

Appellant's defense was an alibi. He claimed that on the day of the robbery he was in Northern Mexico, en route to El Paso, Texas, and that on the day following he registered at a hotel in El Paso under the name of Rupert De Morcerf, a name assumed by him in the theatrical business. In corroboration of his testimony appellant produced a page from the hotel register showing that some person had registered under that name at that hotel on the day following the robbery. The hotel was conducted by a Mrs. Bandy, whose deposition was taken and read in evidence. She identified a picture of appellant as being

the person she had known as Rupert De Morcerf and as the person who registered at her hotel on the day mentioned under that name. Appellant further testified that he was accompanied on the trip to El Paso by a man named Hernandez, that the latter registered at the same hotel on the same day, and at appellant's request had written a letter to appellant's mother, who lived in San Francisco. Appellant testified that he had seen Hernandez mail the letter, and such a letter was produced at the trial, the San Francisco postmark thereon being dated March 7, 1928. In rebuttal, the prosecution introduced the testimony of a handwriting expert to the effect that the signature on the hotel register was not in the handwriting of appellant.

It is apparent from the foregoing that there is a sharp conflict in the evidence as to appellant's participation in the robbery; therefore the question of whether Fitzgerald was correct in his identification of appellant as being one of the robbers, or whether the evidence adduced in support of appellant's asserted alibi should be believed, was clearly one of fact for the determination of the jury, and it having accepted and acted upon the former, which is not inherently improbable, we are not permitted, under the well-established rule, to interfere with its conclusion.

█ Subject to appellant's objections the prosecution was allowed to offer in rebuttal the testimony of a Mr. Beacher and his wife to the effect that appellant was at their home in Oakland about 8 o'clock at night on February 24, 1928. We find no error in the rulings relating to the admission of this testimony for the reason that appellant claimed while testifying in his own behalf that he was outside of the state of California, not only at the time of the robbery but for a considerable period prior thereto. In this regard he testified on direct examination that he left El Paso, Texas, for San Luis Potosi, Mexico, on February 25th, and on cross-examination he testified, without objection, that he had been in El Paso, Texas, two or three days before going to San Luis Potosi. This, of course, would have been a physical impossibility, if, as the Beachers testified, he was in Oakland on the night of February 24, 1928.

█ Nor do we find any error in allowing Detective Van Matre to testify as to appellant's conduct and the

conversations had with him and in his presence at the time of his arrest in San Francisco. (*People* v. *Sprague,* 52 Cal. App. 363 [198 Pac. 820]; *People* v. *Sampo,* 17 Cal. App. 135 [118 Pac. 975].) It was for the jury to say whether or not at that time appellant knew that the crime had been committed and that he was accused of having committed it. (*People* v. *Shelest,* 62 Cal. App. 213 [216 Pac. 389]; *People* v. *Piscitella,* 90 Cal. App. 528 [266 Pac. 349].)

During his closing argument to the jury, in commenting upon the testimony of Mrs. Bandy, the district attorney stated in substance that since her testimony was given in the form of a deposition it did "not carry the sanctity that it would if she were here testifying in person." The remarks of the district attorney were assigned as misconduct, and the jury was promptly instructed to disregard them, which was the equivalent, we think, of stating to the jury that the assertion of the district attorney was not the law; and it is to be presumed that the jury followed the court's instructions.

The judgment and order appealed from are affirmed.

Tyler, P. J., and Cashin, J., concurred.