[Crim. No. 1555. First Appellate District, Division One.—March 11, 1930.]

THE PEOPLE, Respondent, v. LLOYD E. SAMPSELL et al., Appellants.

Lloyd E. Sampsell and Ethan A. McNabb, *in pro. per.*, and Leslie D. Summers for Appellants.

U. S. Webb, Attorney-General, and Lionel Browne, Deputy Attorney-General, for Respondent.

KNIGHT, J.—Appellants were indicted by the grand jury of Alameda County for the robbery of the Dwight Way branch of the Bank of America, located on the corner of

Dwight Way and Shattuck Avenue, Berkeley. The indictment charged also that the appellant Sampsell had been previously convicted of robbery and bigamy, and that the appellant McNabb had been previously convicted on two charges of robbery. They pleaded not guilty to the present charge and admitted the prior convictions, and upon trial the jury found them guilty of robbery in the first degree. Following the denial of motions for a new trial they were sentenced to imprisonment in the state prison for the term prescribed by law, and they now prosecute this appeal jointly from the judgments of conviction and the orders denying their motions for a new trial.

Appellants first challenge the legal sufficiency of the indictment, contending that it fails to state a public offense; or if a public offense be charged, it is that of larceny and not robbery, and that therefore, having been found guilty of robbery, they were convicted of a crime with which they were not charged. We find no merit in either point. The indictment is in the short form prescribed by section 951 of the Penal Code as amended in 1927, and is no different in substance from the one considered and sustained in the case of *People* v. *Fallai,* 99 Cal. App. 297 [278 Pac. 449]. Therefore, upon the grounds and for the reasons stated in the decision in that case we hold that the indictment here conforms to the requirements of the present law.

It is next contended that the evidence is insufficient to sustain the verdict against the appellant McNabb. An examination of the reporter's transcript discloses, however, that this point too is without merit, for it appears therefrom that there is ample evidence, both direct and circumstantial, to support the jury's finding. In substance it is as follows: About 3 o'clock on the afternoon of June 14, 1929, an unmasked robber armed with a Luger pistol entered said bank, and after threatening those present with the pistol forced them to lie down on the floor behind the counters. He then robbed the bank of $405 in gold coin including two $2.50 pieces, between seven and eight thousand dollars in currency, a small amount of silver coin, travelers' checks issued by the American Express Company and by the Bank of Italy amounting to $9,000, and a number of bank checks payable to and indorsed by a laundry company, together with the deposit tags for said checks made out in

the name of said company. The gold coin was contained in a small metal "barrel" bank and was kept in a tin "cash" box in the vault. The "barrel" bank and the tin box were also taken. After gathering up the property mentioned the robber rushed out of the front door of the bank, along the sidewalk for about 100 feet, entered a waiting automobile, and escaped. Shortly before the robber entered the bank a strange man was seen by one of the bank employees, standing outside of the bank peering curiously through the windows into the bank, and because of the man's peculiar and suspicious actions the bank employee carefully scrutinized his features. Four days later and on June 18th, appellants were arrested in an apartment which they were occupying jointly in a Leavenworth Street apartment house, in San Francisco; and Sampsell was positively identified by several people who witnessed the robbery, both from within and without the bank, as the man who robbed it, and McNabb was positively identified by said bank employee as the man who was peering through the bank windows. The evidence further shows that appellants had been living in said apartment since June 12th under the fictitious names of Summers and Meline, and that their arrest took place under the following circumstances: The police detectives entered the apartment while appellants were absent, and soon afterward a young woman walked in, representing herself to be Mrs. Summers, and while the detectives were interrogating her McNabb unlocked the door at the entrance of the apartment and came in. He refused to state whether or not his name was Meline, but Mrs. Summers stated in his presence that it was. He was then placed under arrest. When he entered the apartment he was carrying a bundle which the detectives unwrapped and it was found to contain a Winchester rifle and a Maxim silencer. He was armed also with a Colt automatic pistol, fully loaded, which he carried in the front pocket of his trousers, and he had on his person between twelve and thirteen hundred dollars in currency. Shortly after the arrest of McNabb, Sampsell appeared at the door of the apartment and was placed under arrest. He too was armed with a loaded automatic pistol, which he carried concealed beneath his clothing, and he had on his person $250 in currency. Upon searching the apartment in the presence of appellants and the woman

the detectives found all the loot which had been stolen from the bank except a portion of the currency. They found the tin cash box, the small metal "barrel" bank, all of the gold coin including the two $2.50 pieces, all of the travelers' checks, between three and four thousand dollars in currency which was still bound with the bank's wrappers bearing the initials of the manager of the bank, and all of the laundry checks and deposit tags. They also found a "Defiance" gas rifle, loaded with four gas shells and two extra gas shells; a box of Luger automatic pistol cartridges loaded with "dumdum" bullets, and a box of rifle shells. At the trial appellants asserted an alibi, claiming that they were in San Francisco on the day of the robbery, but it was contradicted and shown to be false in several respects, and it was also shown that the appellant McNabb had made a number of contradictory statements in connection with other material matters. Numerous additional circumstances disclosed by the evidence tending to establish McNabb's guilt might be pointed out, but it would seem that the foregoing is more than sufficient to demonstrate that the verdict against him was not wanting in evidentiary support.

At the outset of the trial the district attorney stated that he intended to prove that several weeks prior to the perpetration of the crime for which appellants were then on trial they entered into a conspiracy to commit a series of bank robberies, and to divide the loot received from such enterprises, and to arm themselves for the purpose of resisting arrest and preventing seizure of the loot they stole; and in support of such theory and as a part of its case the state introduced evidence as to the actions and conduct of appellants both before and after the robbery of the Dwight Way bank. Summarized, the salient features of such evidence were as follows: Appellants, while serving time in the penitentiary and in prison road camps, were friends and companions, and after their release from prison they lived together in Seattle with the woman posing as Sampsell's wife. Early in April, 1929, all three came to San Francisco and rented an apartment from April 8th to April 29th, during which time and on April 17th the College Avenue branch of the Oakland Bank, located on College Avenue in Berkeley, was robbed, and besides having appellants identified as the perpetrators of that crime it

was shown that the robbery was executed in the same manner and at the same time of the day as the robbery of the Dwight Way bank was perpetrated; that on April 25th, under fictitious names, appellants and Mrs. Summers fled to Long Beach, and after remaining there at one of the leading hotels for a few days they returned separately to San Francisco and registered at one of the principal hotels, and within a few days thereafter departed for Seattle, Sampsell and Mrs. Summers traveling by airplane; that soon after their arrival in Seattle they purchased a seagoing "gas" yacht, obtained limited navigators' licenses and cruised back to San Francisco, arriving at the yacht harbor on June 12th, and two days later robbed the Dwight Way bank. · On the day following the latter robbery McNabb purchased from an arms company in San Francisco the "Defiance" gas rifle, the gas shells, Winchester rifle and silencer, and two Colt automatic pistols which were subsequently found in their possession. Appellants contend, however, that the admission of all of such evidence, and the argument made by the district attorney to the jury based thereon, and the instructions given by the court upon the subject of conspiracy constituted prejudicial error.

· ▆▆ The law is definitely settled that upon the trial of an accused for the commission of a particular crime, the prosecution may show as a part of its case that such crime was committed in furtherance of a conspiracy to commit a series of like or other criminal acts (*People* v. *Schmidt*, 33 Cal. App. 426 [165 Pac. 555]; *People* v. *Arnold*, 199 Cal. 471 [250 Pac. 168]), and the fact that such evidence may prove that in furtherance of the common object of the conspiracy the accused committed other and distinct crimes does not render such evidence inadmissible (*People* v. *Zimmerman*, 3 Cal. App. 84 [84 Pac. 446]; *People* v. *Anderson*, 59 Cal. App. 408 [211 Pac. 254]). ▆▆ Furthermore, such conspiracy may, and of necessity invariably must, be proved by circumstantial evidence for, as the courts have said, it is not often that the direct fact of an unlawful design which is the essence of a conspiracy can be proved otherwise than by the establishment of independent facts, bearing more or less closely or remotely upon the common design (5 Cal. Jur. 521); and it is not necessary to show that the parties met and actually agreed to undertake the performance of the

unlawful acts (*People* v. *Schmidt, supra*), nor that they had previously arranged a detailed plan among them for the execution of the conspiracy (*People* v. *Sartori,* 43 Cal. App. 304 [184 Pac. 879]). But, the question as to the existence of the conspiracy being one of fact, it is sufficient if the circumstances proved satisfy the jury, leaving the weight and sufficiency of the evidence to the triers of the questions of fact (*People* v. *Schmidt, supra*). ▆ Moreover, it is held that the common design of the criminal enterprise may extend in point of time beyond the actual commission of the act constituting the crime for which the accused is being tried; and that consequently evidence is admissible to prove acts committed after (*Hollingshead* v. *State,* 21 Okl. Cr. 306 [207 Pac. 104]), as well as before (*People* v. *Arnold, supra*), the perpetration of the crime for which the accused is being tried, provided, of course, that it reasonably appears that such acts were committed in furtherance of the common design of the conspiracy. And the questions as to when the design is accomplished or abandoned and whether the acts proved are a part of the design of the conspiracy are also for the jury to determine from the facts and circumstances of each case and the nature and purposes of the conspiracy. ▆ In other words, it is for the jury to say from all the evidence before it whether or not the acts committed subsequent to the commission of the crime are the ordinary and probable effect of the common design, or whether they are a fresh and independent product of the mind outside of and foreign to the object of the original scheme; and if there be any evidence to support the jury's findings on any of the foregoing questions its determination is conclusive on appeal. (See *People* v. *Lorraine,* 90 Cal. App. 317 [265 Pac. 893], and cases therein cited.)

▆ In view of the foregoing legal principles it seems manifest that in the present case the trial court was justified in receiving the evidence relating to the asserted conspiracy, also as to the circumstances attending the arrests; and that being so, it follows that neither the argument of the district attorney to the jury based on such evidence nor the instructions of the court upon the subject of conspiracy, constituted error. ▆ Even assuming, as appellants contend, that the conspiracy, if any there was, ended at the time of the commission of the robbery of the Dwight Way

bank, and that consequently the evidence as to the purchase of the firearms thereafter was erroneously admitted, a reversal of the judgment upon that ground is not warranted, for, as will be observed, aside from all the rest of the proof in the case, the evidence relating to the robbery for which appellants were indicted and tried is overwhelming in establishing their guilt thereof; and under such circumstances it cannot be reasonably maintained that the verdict finding them guilty of such crime has resulted in a miscarriage of justice, in which event only is a reversal of a judgment justified. ■ Moreover, and in this connection, it should be stated also that the court was careful to instruct the jury that appellants were "on trial solely for the offense charged in the indictment, to-wit: robbery alleged to have been committed on June 14, 1929, as set forth in the indictment"; and were "not on trial for conspiracy nor for any offense other than the offense charged in the indictment"; and that, although evidence was received as to events happening before and after the fourteenth day of June, such evidence was to be considered by the jury for the limited purpose of determining whether a conspiracy existed between appellants to commit a series of bank robberies, to protect undivided loot secured therefrom, and to arm themselves for the purpose of preventing arrest; and of determining also whether the offense for which they were being tried was committed in pursuance of the common design of such conspiracy. It must be presumed that the jury understood and followed such instructions (*People* v. *Ruef*, 14 Cal. App. 576 [114 Pac. 48, 54]); and if it did, its verdict was reached in a fair and legal manner.

■ Appellants complain also of the giving of several instructions. Some relate to the law of conspiracy and others to the duties of jurors generally. The objections urged are untenable and in our opinion do not possess sufficient merit to call for a discussion of the instructions separately. In this connection it may be stated that we have examined the entire charge and are convinced that the jury was fully, fairly and clearly advised upon all legal principles pertaining to the case.

■ The evidence shows that the robbery of the College Avenue bank on April 17th was accomplished with the aid of a Luger automatic pistol; and an employee of the Dwight

Way bank, named Faust, testified that a pistol was used by Sampsell in robbing the latter bank; but not being familiar with firearms the witness was unable to specify the type of pistol used. In order, therefore, to establish such fact the prosecution displayed at the trial and afterward introduced in evidence a Luger automatic pistol, which the district attorney stated belonged to one of the prosecuting officers; and upon exhibiting the pistol to the witness he testified that it was similar to the weapon used by Sampsell on the occasion mentioned. A week after appellants were arrested the police officers found on appellants' yacht a magazine or cartridge clip, and loader, belonging to a Luger automatic pistol, and these articles, too, were introduced in evidence. Appellants contend that the above proceedings and the introduction in evidence of the articles mentioned was error. We are unable to agree to such contention. At the time the pistol was produced it was definitely stated that the same was being used merely for the purpose of illustration. And as to the articles found on appellants' yacht, it was shown that up to the time of their arrest they occupied the yacht part of each day and night, and therefore the objection that the articles found were left there by someone else went rather to the weight than to the admissibility of the evidence.

■ Nor are we able to sustain appellants' contention that the court erred in permitting the prosecution to show that the appellant McNabb testified falsely before the grand jury as to circumstances relevant to the case. As held in *People* v. *Peete,* 54 Cal. App. 333 [202 Pac. 51] , false declarations made by an accused for the purpose of misleading or warding off suspicion, though not conclusive of guilt, may, nevertheless, strengthen the inference arising from the facts; and, therefore, proof of such false and fabricated statements is admissible on the same theory that evidence of flight and concealment is admissible, to show a consciousness of guilt (see, also, *People* v. *Cole,* 141 Cal. 88 [74 Pac. 547] ; *People* v. *Garcia,* 83 Cal. App. 463 [256 Pac. 876]). Here it may be fairly inferred that the false testimony was given before the grand jury with the preconceived design of misleading and deceiving those whose official duty was to ascertain the truth.

Appellants claim also that the trial court refused to grant them a continuance, and in so refusing committed error. It appears that the attorneys retained by appellants in the beginning and who represented them until after the case was set for trial withdrew a few days prior to the date of trial, and that thereupon appellants accepted the services of the public defender. On the morning of the trial appellants asked permission to terminate the services of the public defender and to file and present in their own behalf a motion for a continuance upon the ground that they had been unable to complete arrangements with other counsel with whom they had been negotiating, and upon the additional ground of the absence of certain witnesses. After considerable discussion the attorney with whom appellants had been negotiating appeared in court, and after conferring with appellants agreed to proceed with the trial of the case. Thereupon, and without any further attempt being made by appellants to urge the application for continuance, the court proceeded with the impanelment of the jury and the trial of the case. It further appears that all of the persons whose presence at the trial appellants desired as witnesses were in attendance during the trial and were available to appellants, except one who was a barrister and solicitor in Vancouver, and appellants made no application at any time to obtain his testimony by deposition. Under the circumstances stated no error has been shown.

Appellant McNabb makes the further contention that even assuming that he was at the scene of the robbery shortly prior to its commission, peering through the bank windows as testified by the witness Faust, such fact alone does not prove that he aided or abetted in the commission of the crime, and that therefore he cannot be held to be a principal in its commission. Throughout the trial and in his testimony before the jury he insisted he was not in Berkeley at all on the day of the robbery; and, having so testified, the prosecution was deprived of any opportunity to cross-examine him as to his purpose in being there and acting in the manner described by said witness. However, assuming that despite the state of the record above set forth he may now urge this defense for the first time on appeal, we are convinced that it is not maintainable for the following reasons: the question as to whether or not a person who

is shown to have been present at the time and place of the commission of the crime has aided and abetted therein, or, not being present, has advised and encouraged its commission, is one of fact for the jury to determine from all the circumstances established (*People* v. *Wilson,* 93 Cal. App. 632 [269 Pac. 951]; *People* v. *Kauffman,* 152 Cal. 331 [92 Pac. 861]; *People* v. *Wilson,* 135 Cal. 331 [67 Pac. 322]; *People* v. *Woodward,* 45 Cal. 293 [13 Am. Rep. 176]); and if he was present and his presence be unexplained, such fact may be deemed a circumstance tending to show complicity in the crime (*People* v. *Woodward, supra*). Here the jury, by its verdict, declared that he was at the scene of the crime, which leaves his presence there unexplained; therefore such fact, coupled with the additional evidence showing possession of the fruits of the crime, was amply sufficient to support the conclusion reached by the jury that he was a principal within the meaning the section 31 of the Penal Code. The remaining points raised by the appeal are not of sufficient importance to require special attention, all being without merit.

The judgments and orders appealed from are affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 26, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 10, 1930.

All the Justices present concurred.