[Crim. No. 2143. Second Appellate District, Division Two.—December 9, 1931.]

THE PEOPLE, Respondent, v. JACQUES BEESLY, Appellant.

Alexander L. Oster for Appellant.

U. S. Webb, Attorney-General, and Warner I. Praul, Deputy Attorney-General, for Respondent.

FRICKE, J., *pro tem.*—Appellant was charged with violating the State Poison Act by forging a prescription for

narcotics and appeals from the judgment of imprisonment in the state prison on the grounds that the court erred in overruling his demurrer to the information and that the sections of the State Poison Act (secs. 7 and 8, Act 5994, General Laws, as amended) upon which the prosecution is based are unconstitutional.

The information charges the defendant with the "crime of violation of the State Narcotic Act" and alleges that defendant, "with intent then and there to obtain narcotic drugs, did wilfully, unlawfully, fraudulently and feloniously make, forge and counterfeit a certain prescription and order in writing for the delivery of narcotics, and did then and there utter, publish and pass the same, knowing said prescription to be false, forged and counterfeited, as aforesaid, with intent then and there to obtain narcotic drugs as aforesaid", and then sets out *in haec verba* a physician's prescription for "H. M. C. No. 1 Tablets No. XX". Appellant relies basically upon the failure of the pleading to set forth that the drug called for by the forged prescription was one of those enumerated in section 8 of the Poison Act. The information quite evidently was intended to charge a violation not of the general forgery law, section 470 of the Penal Code, but of section 7 of the Poison Act, which makes it a felony to forge a prescription "for any narcotic drugs specified in section eight of this act or who obtains such drugs by any forged or altered prescription . . . "

The sufficiency of an indictment or information is not to be tested by the rule of the common law nor by the rules which existed prior to the amendments of 1927 and 1929 of our statutes relating to pleading in criminal cases. The true rule can be determined only by a consideration of all of the statutes affecting the subject as they exist since those amendments. The purpose of an indictment or information is to inform the accused of the charge which he must meet at the trial. At common law, where this information came solely from the indictment, much particularity was required. Thus, in charging murder, it was necessary to charge the manner in which the murder was committed and the means used but, long before the present form of pleading, our Supreme Court in *People* v. *King*, 27 Cal. 510 [87 Am. Dec. 95], said: "If the defendant is guilty he

stands in need of no information to be derived from a perusal of the indictment as to the means used by him in committing the act or the manner in which it was done for as to both his knowledge is quite as reliable as any statements contained in the indictment. If he is not guilty, the information could not aid him in the preparation of his defense.'' As a part of the accusatory procedure the law now provides that in every case the accused is entitled to a copy of the testimony given before the grand jury or the committing magistrate, as the case may be (secs. 870, 925, Pen. Code), and he is to-day better informed as to the case he must meet than was an accused under the detailed form of pleading required at common law. By section 959 of the Penal Code as amended in 1927 (Stats. 1927, p. 1041) we have the statutory provision that an information is sufficient if it can be understood therefrom that it is entitled in a court having authority to receive it, that the defendant is named, or, if his name is not known and that fact is pleaded, he may be charged by a fictitious name, that the offense is one of which the court has jurisdiction and that the offense was committed prior to the filing of the information. The former requirements of subdivisions 6 and 7 of section 959, that the act or omission charged must be clearly and distinctly set forth in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended and to enable the court to pronounce judgment upon conviction, were repealed by the 1927 amendment and are no longer a part of that section. In so far as section 950 of the Penal Code seems to conflict with the rule laid down by section 959 as amended, the latter section must control in view of the evident intent of the legislature to remove the former requirements of subdivisions 6 and 7 by their repeal. Section 952, which formerly required the pleading to set forth the particular circumstances of the offense charged, as amended, declares that it shall be sufficient if it be ''in any words sufficient to give the accused notice of the offense of which he is accused''. There, in a nutshell, is stated the principle of our present simplified form of pleading a criminal offense—the accused is entitled to notice of the offense of which he is charged but not to the particular circumstances thereof, such details being

furnished him by the transcript of the testimony upon which the indictment or information is founded.

Illustrating the foregoing principle we find that an allegation that the defendant "did wilfully and unlawfully take, steal and carry away the property of J. B. Dalby consisting of five head of cattle, of the value of two hundred twenty dollars", is sufficient to charge that form of the crime of theft which is the obtaining of property by false pretenses, an offense which before the 1927 amendments could not be properly charged in less than several hundred words. (*People* v. *Plum*, 88 Cal. App. 575 [263 Pac. 862, 265 Pac. 322]; *People* v. *Maddux*, 102 Cal. App. 169 [282 Pac. 996]; see, also, *People* v. *Manchell*, 91 Cal. App. 788 [267 Pac. 718]; *People* v. *Wickersham*, 98 Cal. App. 502 [277 Pac. 121].) Section 952 must also be read in connection with section 951 of the Penal Code, providing for the form of an indictment, wherein is given, as an example of the statement of the act or omission charged, the form "murdered C. D.". The authorities support an indictment or information charging murder in this simplified form (*People* v. *Magsaysay*, 210 Cal. 301 [291 Pac. 582]), and also sustain a charge of robbery in the words "robbed B" of certain described property. (*People* v. *Fallai*, 99 Cal. App. 297 [278 Pac. 449]; *People* v. *Sampsell*, 104 Cal. App. 431 [286 Pac. 434]; *People* v. *Summers*, 107 Cal. App. 250 [290 Pac. 464].) As stated in *People* v. *Plum*, 88 Cal. App. 575, 587 [263 Pac. 862, 265 Pac. 322, 323], when a defendant has been furnished with a transcript of the testimony upon which the pleading is based a rule requiring the indictment to state more than is required by sections 951 and 952 would leave "nothing but the most flimsy pretext to support it". By clear analogy an information charging that on a certain date and within the county a defendant violated the State Narcotic Act, to wit: That the defendant "forged" a prescription for narcotics, would be good. The fact that the information here charges more than the law requires will not render the information defective where, as here, the surplusage does not tend to establish a defense or to destroy the effect of an essential averment.

The point that the information fails to charge an intent to defraud is without merit as the crime defined in

section 7 of the Poison Act does not include an intent to defraud as one of the elements of the *corpus delicti*. The cases cited, involving the charge of forgery under section 470 of the Penal Code are, therefore, not in point since in forgery the intent to defraud is an element of the crime. Furthermore, these cases were decided prior to the amendments of 1927. While the information before us would have been free from the attack here made by a specific allegation that the drug covered by the prescription was a specific drug enumerated in section 8 of the Poison Act, it was sufficient even in the face of the demurrer.

Even where an indictment or information is so defective that a demurrer thereto should have been sustained, still, if upon the trial the crime sought to be charged is fully proved, the case falls within the saving grace of section 4½ of article VI of the California Constitution, and of section 960 of the Penal Code, relating to errors in matters of pleading, and the error is not prejudicial. (*People* v. *Kuder*, 93 Cal. App. 42, 55 [269 Pac. 198, 630] ; see, also, *People* v. *Bonfanti*, 40 Cal. App. 614 [181 Pac. 80].) The plea of guilty of the defendant in the case at bar, admitting that he had violated the Poison Act by forging a prescription for narcotics, of itself removed any claim that defendant was prejudiced and furthermore amounted to a waiver of his former objection by demurrer to the information. (See *In re Cook*, 13 Cal. App. 399 [110 Pac. 352].) Conceding, for the purpose of argument only, appellant's contention that an objection to the sufficiency of an information is not waived by a plea of guilty, where a demurrer has been interposed, we call attention to the record which shows that the information as filed charged the defendant with "Forgery" and that the demurrer was filed to this information; that the demurrer was overruled and that then the information was amended by inserting the words "Violation of State Narcotic Act" instead of the word "Forgery" and that the defendant pleaded guilty to the information as thus amended. There was, therefore, no demurrer to the amended information to which defendant pleaded guilty nor did the defendant make any motion in arrest of judgment, and the case is therefore one in which the defendant pleaded

guilty to a charge in an information to the sufficiency of which he had made no objection.

Appellant's final point is that section 8 of the Poison Act is unconstitutional as violative of section 24 of article VI of the state Constitution requiring that laws shall be published in no other than the English language and contends that, while the words cocaine, opium, morphine and heroin are commonly recognized, the words describing other drugs in the same paragraph of the statute— viz.: "codeine, alpha eucaine, beta eucaine, flowering tops and leaves, extracts, tinctures and other preparations of hemp or loco weed (cannabis sativa) or peyote (anhalonium", quoted from the statute in the brief—are not in the English language and the statute is therefore void for uncertainty. Appellant's counsel, with a confidence deserving of a more substantial foundation, asserts that "Several of the above terms having a Latin derivative cannot be found in the English Dictionary." However, on examination of our nearest available dictionary, Funk & Wagnalls New Standard Dictionary of the English Language (copyright in 1919) we find that it defines codeine, eucaine, alpha and beta, hemp, cannabis, loco weed, peyote and anhalonium. The only word included in the quoted list which is not defined is lonely little "sativa". But, as the terms "cannabis sativa" and "anhalonium" are inclosed in brackets in the statute to indicate that they are the synonymous botanical names for the English words immediately preceding them, they are not necessary to the interpretation of the statute, may be treated as surplusage, and cannot affect its validity. We might add that even a 1909 copyright edition of Webster's International Dictionary of the English Language defines all of the quoted words except "sativa", "peyote" and "anhalonium", and here in the southwest "mescal" or "peyote" is certainly well enough known to be a part of our language even if it be but a mere spineless cactus. While the presence in the dictionary of the words in question disposes of counsel's argument by eliminating his major premise we do not wish to be understood as holding that only those words which are found in an English dictionary are a part of the English language. When a word, whether coming from a foreign language or coined to meet a particular need of

expression has been used as an English word in speech or writing to such an extent that its meaning has become commonly understood by people dealing with the subject to which it relates, it becomes a part of the English language with the meaning attached to it by such use. Thus, even if the word "codeine" were not in the English dictionary its use as an English word for more than a quarter of a century by people buying, selling and using that drug would make it such. The contention that section 8 of the Poison Act is not certain and definite and is unconstitutional is untenable.

The judgment is affirmed.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on December 21, 1931, and the following opinion rendered thereon:

FRICKE, J., *pro tem.*—The petition is largely a restatement of the argument presented in appellant's brief. The argument that no case has as yet been decided involving the sufficiency of an information charging the precise offense here involved is not at all persuasive. As to the case of *People* v. *Horiuchi,* 114 Cal. App. 415 [300 Pac. 457, 460], the statement quoted from the opinion in the petition that, "Such statement must be in ordinary and concise language and made in such manner as to enable a person of ordinary understanding to know what was intended. But, above all things, the charge must be so certain that a court would be enabled to pronounce judgment upon conviction," we cannot but feel that the learned court rendering the opinion could not have had in mind the fact that by the amendment of 1927 to section 959 of the Penal Code those requirements for the sufficiency of an indictment or information were removed from our rules of pleading. The facts of the Horiuchi case have no resemblance to the facts here. ▪ Petitioner is in error in the assertion that the amendment of the information, by changing the allegation of the information that the defendant was accused of forgery to the averment that he was accused of a violation

of the narcotic law did not change the substance of the charge. As a charge of forgery the information was defective because it failed to allege an intent to defraud, but, with the charge changed to a violation of the narcotic law (Stats. 1929, p. 380) which does not require an intent to defraud as an element of the crime, the failure to charge that intent ceased to be a defect. Furthermore, section 952 requires that the public offense be "specified" in the pleading. A further material difference is evident when we consider that the penalty which would follow a conviction is not the same for the two offenses.

The cases cited upon the question of the constitutionality of the Poison Act (Stats. 1907, p. 124) are not in point. In the case of *In re Lockett*, 179 Cal. 581 [178 Pac. 134], the sole description of the act made punishable was contained in two words, neither of which was in the English language and neither of which had any common use in any language; *People* v. *Ah Sum*, 92 Cal. 648 [28 Pac. 680], while apparently in point, ceased to be authority with the change in the law of pleading; and *In re Peppers*, 189 Cal. 682 [209 Pac. 896], was not a decision passing upon a statute not in the English language.

The petition is denied.

Craig, Acting P. J., and Thompson (Ira F.), J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 7, 1932.