[Crim. No. 3101.   Second Appellate District, Division One.—July 20, 1938.]

THE PEOPLE, Respondent, v. DR. W. BURLIN HUM-
PHREY et al., Defendants; LOUIS FEINSTEIN, Ap-
pellant.

L. E. Dadmun for Appellant.

U. S. Webb, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

YORK, P. J.—The grand jury of Los Angeles County returned an indictment containing two counts charging the appellant with violations of section 653f of the Penal Code. Count I charged that on or about January 29, 1937, appellant did wilfully, unlawfully and feloniously solicit one Leon Kent to commit and join in the crime of grand theft; count II charged that on or about the same date, appellant committed the same act with reference to one Dorothy Lucile Kent. The jury rendered its verdict finding appellant guilty as charged in each count of the indictment; motions in arrest of judgment and for new trial were denied by the court, and from the judgment of conviction which was thereafter entered pursuant to the verdict, this appeal is prosecuted.

Appellant urges (1) that the indictment does not state a cause of action; (2) that there was error on the part of the trial court in the admission of evidence; (3) that the evidence is insufficient to sustain the judgment; (4) that there was misconduct on the part of the trial judge; (5) misconduct on the part of the district attorney; (6) that the court committed error in instructing the jury; and (7) that it was error for the court to deny appellant's motion for new trial and the motion in arrest of judgment.

The factual situation out of which the instant cause arose is as follows: Appellant, who is an attorney at law, became acquainted with Leon Kent in 1936, when appellant represented Kent in connection with an injury sustained by the latter while employed by the Cudahy Packing Company. During the early part of February, 1937, Dorothy Lucile Kent, wife of Leon Kent, was ill and said Leon Kent borrowed $35 of appellant, who asked concerning Mrs. Kent's

condition of health and said (as related by Kent): "You was not in an accident, was you?" to which Kent replied in the negative. Appellant then said, "It could have been an accident, could it not have?" to which Kent replied, "It could have." Appellant then said, "Suppose it had been a street car accident?" Kent stated that he and his wife had not been on a street car and appellant stated that there had been a street car accident between Seventh and Eighth on Central Avenue on January. 28, 1937, and instructed Kent to tell his wife that she was on the street car involved in the accident and was about to have a miscarriage; that from now on it was a street car accident and not a miscarriage, if Mrs. Kent would agree to it. Kent talked to his wife and a day or two later reported to appellant that Mrs. Kent would agree to the plan outlined, whereupon appellant sent defendant Dr. Humphrey to see Mrs. Kent. Dr. Humphrey told Mrs. Kent that if anyone should call and make inquiry to say that it was a street car accident and not a miscarriage. Shortly thereafter, to wit, around February 17th, Kent took his wife to the general hospital, where a miscarriage occurred. As a matter of fact, Mrs. Kent had been confined to her bed for about a month prior to the 3d or 4th of February and on January 28 or 29, 1937, the day upon which the accident was supposed to have occurred, Mrs. Kent was in bed and neither she nor her husband was in the vicinity of Seventh and Central. Shortly thereafter Kent verified a complaint filed in the municipal court of Los Angeles in which he sought to recover $500 on account of doctor's bills alleged to have been paid by him as a result of his wife's injuries, and $2,000 damages for injuries sustained by Mrs. Kent. A deposition was taken in that case and prior thereto Kent and his wife met in appellant's office where appellant told them the details to which they should testify. Several weeks later, upon instruction from appellant, Kent wrote him a letter instructing him to dismiss the case, as the accident had not occurred "as it was supposed to have".

Thereafter Kent told appellant that he had slipped in the bathtub and injured himself and that he had an accident policy with the Mutual Life Insurance Company, whereupon appellant made a claim against said company based upon a report of the accident which Kent handed to him.

Mrs. Kent testified that in February, 1937, she was an expectant mother and Dr. Ruth Temple was attending her; that while confined to her bed at her home she had a conversation with her husband about appellant and then saw appellant sometime later. Meanwhile, Dr. Humphrey called on her and asked her what was wrong and she told him. She also said that she had not been in a street car accident and Dr. Humphrey told her that from then on it would be understood that she was in a street car accident which would be the cause of a miscarriage. Appellant then called on her and said, as related by Mrs. Kent: ''You were on the street car going to town at six o'clock in the morning and the street car between 7th and 8th on Central had an impact with a truck there and the truck was going at a certain speed and the jamming down of the brakes of the car trying to keep from hitting the truck had caused us to fall. The car was going at a certain speed and the jamming down of the brakes, the motorman trying to keep from hitting the truck threw us all out of our seats.'' Mrs. Kent's deposition was then taken in connection with the alleged accident, in which she stated that she and her husband had boarded the street car at Forty-seventh Street and Central Avenue; that they were riding along on the ''U'' line until they got between Seventh and Eighth Streets and all of a sudden there was an impact. The street car hit a truck there; that she and her husband were sitting on the rear end on the right-hand side of the car; that she did not remember whether she heard the sound of a bell, gong, or anything to warn the truck to move out of the way of the car because she was so excited over the accident; that her husband had gone to the front of the car to smoke, and that when she fell she lay there until her husband came back and picked her up; that she heard the motorman slamming down the brakes of the street car to keep from hitting the truck. None of the matters testified to by Dorothy Lucile Kent in her deposition actually happened. Before testifying and the taking of her deposition, she and her husband went to the office of appellant, who instructed them what to say.

Mr. Wood, the assistant general claim agent for the Los Angeles Railway, testified that sometime in February, after the filing of the Kent suit, he had a telephone conversation with appellant, who asked him what he thought about the

case. Mr. Wood stated that he had received no report of any accident and that he had to be very suspicious of the claim. Appellant then stated that a passenger by the name of Brown claimed to have been on the car and that she had been contacted by the railway company. Subsequently, Mr. Wood located the record of the accident presented by Mrs. Brown and thereupon communicated to appellant that he had found the record but had also discovered that the car upon which Mrs. Brown claimed to be a passenger had just left the barn and that there was not a passenger on it. One J. E. Blackstrom, a conductor employed by the railway company, testified that on the 28th of January, 1937, his car was involved in a collision near Seventh and Central; that the car had just pulled out of the barn and had gone about two blocks; that there were no passengers on the car at any time previous to the collision that morning. The motorman, Ed. P. Snyder, gave substantially the same testimony.

Eunice Brown testified that she consulted Dr. Humphrey regarding an illness from which she was suffering on January 28, 1937, and told him that she was returning from work when the street car behind the car on which she was riding was struck by a truck. Dr. Humphrey told her if she was on the street car that was struck she could get some money from the railway company, but that she should have a lawyer. The next day Dr. Humphrey brought appellant to see her and appellant suggested suing the railway company. At that time she had an accident policy and signed a report. Appellant told her to report a street car accident.

Callie Elliott testified that in 1935 she fell and injured her elbow and called a Dr. Cooley; that about a week later she met a man named Dorris and a week after that met the appellant. Appellant asked if she was Mrs. Elliott and stated he had come from the doctor's office and wanted her to sign some papers. That night she, appellant and Dorris went to ''where the accident was supposed to have happened'', i. e., Seventh and Figueroa Streets. The municipal court file in the action wherein she was named plaintiff was shown to her and she stated that the signature to the complaint did not appear to be in her writing.

J. E. Haley, attorney for the Mutual Benefit Health and Accident Company, identified a proof of loss signed by Leon Kent and a release to the company by Kent. The claim was

presented in July, 1937, on account of injuries supposed to have been sustained by Kent. Haley dealt with appellant as attorney for Kent in connection with the claim. The injuries claimed were alleged to have been suffered by Kent as result of a fall in a bathtub on or about January 30, 1937. The claim was settled for $135.

Leon Kent further testified that in February, 1937, he saw appellant in the latter's office; that appellant told him the suit against the railway company had "blown up". Appellant then said he thought they could make some money out of the bathtub incident, and Kent delivered his policy to appellant. Thereafter appellant "took care of all of it", and Kent later signed the claim blank, which was all filled out when he signed it. As a matter of fact, Leon Kent had not fallen in a bathtub, although he did tell appellant he had suffered a fall.

■ In connection with his contention that the indictment does not state a cause of action, appellant urges first, that any indictment or information charging grand theft that fails or omits to state the description of the property taken, its value and by whom owned, does not charge a defendant with the commission of grand theft; and second, that the indictment here fails to state what appellant solicited Leon Kent and Dorothy Lucile Kent to do, hence no offense is charged. Appellant further contends that a particular description of the offense is necessary in order to enable defendant to prepare his defense or to interpose a plea of former jeopardy should he be further prosecuted for the same offense; and that section 487 of the Penal Code defining theft must be read with section 653f of the Penal Code in order to give the accused sufficient notice of the offense with which he is charged.

The indictment herein charges that appellant "did willfully, unlawfully and feloniously *solicit* one Leon Kent (and one Dorothy Lucile Kent) to commit and join in the commission of the crime of grand theft", a violation of section 653f of the Penal Code. The gist of the offense is the *solicitation* of the commission of the crime of grand theft, and not the commission of grand theft. (Italics added.)

Section 653f of the Penal Code provides: "Every person who solicits another . . . to commit or join in the commission of . . . grand theft . . . is punishable by imprisonment in

the county jail not longer than one year or in the state prison not longer than five years, or by fine of not more than five thousand dollars. Such offense must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances.''

By the terms of section 952 of the Penal Code, as amended in 1929, it is declared that the information or indictment may be drawn ''in the words of the enactment'', or ''in any words sufficient to give the accused notice of the offense of which he is accused''. Since that amendment, ''greater liberality is allowed in determining the sufficiency of the allegations of an information or indictment''. (*People* v. *Odom,* 19 Cal. App. (2d) 641, 645 [66 Pac. (2d) 206].) In *People* v. *Beesly,* 119 Cal. App. 82, it is stated at page 84 [6 Pac. (2d) 114, 970], ''The sufficiency of an indictment or information is not to be tested by the rule of common law nor by the rules which existed prior to the amendments of 1927 and 1929 of our statutes relating to pleading in criminal cases. . . . The purpose of an indictment or information is to inform the accused of the charge which he must meet at the trial. At common law, where this information came solely from the indictment, much particularity was required. . . . As a part of the accusatory procedure the law now provides that in every case the accused is entitled to a copy of the testimony given before the grand jury or the committing magistrate, as the case may be (secs. 870, 925, Pen. Code), and he is today better informed as to the case he must meet than was an accused under the detailed form of pleading required at common law.'' Again, in *People* v. *Britton,* 6 Cal. (2d) 1, at 5 [56 Pac. (2d) 494], the court said: ''It is well settled in this state that an indictment or information need not allege the particular mode or means employed in the commission of an offense, except when of the essence thereof. (14 Cal. Jur. 55, sec. 41, and authorities there cited.) In other words, particulars as to manner, means, places or circumstances need not in general be added to the statutory definition. (*People* v. *Giacamella,* 71 Cal. 48, 49 [12 Pac. 302] . . . ; *People* v. *Russell,* 81 Cal. 616, 617 [23 Pac. 418] . . . ) The indictment or information need only charge the essential elements of the statutory offense. It then fairly apprises the defendant of what he is to meet at the trial.''

The indictment in the instant case follows the language of the statute and sufficiently states the crime with which appellant was charged, to wit: solicitation of the commission of the crime of grand theft. The record discloses that appellant filed on behalf of Leon Kent and Dorothy Lucile Kent a complaint seeking damages in the sum of $2,000 for alleged injuries sustained by Mrs. Kent, and in the sum of $500 to cover doctor's bills, while as a matter of fact neither was involved in any accident.

In connection with his second point, appellant claims error on the part of the trial court in permitting the introduction into evidence of proof of other crimes committed by him; that intent *per se* is manifested by the act of solicitation and, therefore, it is unnecessary to show other crimes in order to prove intent.

It was the theory of the prosecution that the transaction here in question was not simply an action filed innocently by appellant upon the basis of misrepresentations made to him by his client which he did not know to be untrue, but that appellant had acted as counsel in two other cases identical in nature and in which two other parties, Eunice Brown and Callie Elliott, who were unknown to the Kents, appeared as plaintiffs, and that the basis of the claim in each case was for the recovery of damages alleged to have been suffered in a street car accident which in fact never occurred. Evidence of the accident insurance claim was offered and admitted to show a plan or scheme in which appellant was engaged, to present claims and file actions of the same nature for the purpose of defrauding the defendants in such actions, and thereby obtain money upon an alleged cause of action which did not in fact exist.

The testimony complained of was evidence of the common design of the criminal enterprise charged in the indictment and was admissible to prove a general plan or scheme to defraud, as well as to prove consciousness of guilt. (*People* v. *Northcott,* 209 Cal. 639, 653 [289 Pac. 634, 70 A. L. R. 806]; *People* v. *Shurtleff,* 113 Cal. App. 739, 744 [299 Pac. 92]; *People* v. *Sampsell,* 104 Cal. App. 431 [286 Pac. 434].)

With reference to the testimony of Callie Elliott, appellant urges that a witness cannot be impeached because of failure to testify as expected, if such witness has not testified against the party producing him. The witness in answer

to the question: " . . . did Feinstein ever talk to you about your being in a street car accident?" replied, "Feinstein never talked with me." The district attorney then asked permission to impeach his witness on the ground of surprise and was allowed to confront her with her testimony given before the grand jury to the effect that it was appellant who first told her about claiming she was in a street car accident.

The prosecution had the right to assume that the witness would adhere to the statement made before the grand jury. Being taken by surprise when she answered contrary thereto, the prosecution had a right to show that she had made such contrary statement. (*People* v. *Gallagher*, 12 Cal. App. (2d) 434, 437 [55 Pac. (2d) 889], where it was held that the admission of evidence that impeached the prosecution's own witness did not constitute prejudicial error, where a reading of the entire record, including the testimony, showed there had been no miscarriage of justice.)

■ Appellant maintains that the evidence is insufficient to sustain the judgment because of lack of requisite corroboration of the testimony of Leon Kent and Dorothy Lucile Kent, and also because of the inherent improbability of their testimony.

Even though it may be assumed for the purpose of argument only that Leon Kent and Dorothy Lucile Kent were accomplices of appellant, neither of said Kents is charged with the commission of a crime; it is appellant who is charged with the crime of· soliciting both Leon Kent and Dorothy Lucile Kent to commit the crime of grand theft. As appellant prepared and filed a complaint seeking $2,500 in damages by reason of the injuries alleged to have been received in a street car accident which was supposed to have taken place on January 28, 1937, that fact, taken with all of the surrounding circumstances disclosed by the record, was ample corroboration of the testimony of both Leon Kent and Dorothy Lucile Kent.

Corroborating evidence is sufficient if it of itself tends to connect the accused with the commission of the offense, although it is slight and entitled, when standing by itself, to but little consideration. (*People* v. *Tanner*, 3 Cal. (2d) 279 [44 Pac. (2d) 324]; *People* v. *Davis*, 210 Cal. 540 [293 Pac. 32]; *People* v. *Kempley*, 205 Cal. 441, 456 [271 Pac.

478]; *People* v. *McLean,* 84 Cal. 480 [24 Pac. 32].) "The law does not require that the evidence necessary to corroborate the testimony of an accomplice shall tend to establish the precise facts testified to by the accomplice; and strong corroborative testimony is not necessary to support a judgment of conviction on the testimony of an accomplice." (*People* v. *Davis,* 210 Cal. 540, 558 [293 Pac. 32], citing *People* v. *Martin,* 19 Cal. App. 295 [125 Pac. 919].)

It is obvious that the corroborating evidence in the instant case satisfies all legal requirements.

As to the angle of improbability complained of by appellant, such improbability of testimony must amount to incredibility and must very clearly appear in order to justify a reversal. (*People* v. *Dorland,* 2 Cal. (2d) 235, 243 [40 Pac. (2d) 474].) The testimony of the Kents established the solicitation by appellant that they make a false claim upon the railway company for injuries supposed to have been suffered in a street car accident which appellant knew had not occurred. This is amply corroborated by the filing by appellant as an attorney at law of the complaint in which the Kents were named plaintiffs seeking damages on account of this alleged accident. In the light of the facts disclosed by the record, appellant's claim as to the inherent improbability of the testimony of Leon Kent and Dorothy Lucile Kent cannot be sustained.

Appellant's fourth point, misconduct of the trial judge, is not sustained by the record. As to the claim of misconduct of the district attorney, while we do not condone the remarks made by him during the trial and during his argument to the jury, such remarks were not so reprehensible in character as to constitute prejudicial misconduct which would warrant a reversal of the judgment, in face of the overwhelming proof of appellant's guilt. This is especially true, in view of the fact that the jury was admonished by the court that statements of counsel were not to be considered by it as evidence in the case.

A thorough examination of all of the instructions given reveals that the jury was fully and fairly informed upon the various elements forming the basis of the offense charged, and that appellant suffered no prejudice by the refusal of the court to give the requested instructions.

There was no error in the denial of appellant's motions for new trial and in arrest of judgment.

The judgment and order are affirmed.

Doran, J., and White, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 18, 1938. Houser, J., voted for a hearing.