[Crim. No. 3148.   Second Appellate District, Division Two.—December 30, 1938.]

THE PEOPLE, Respondent, v. WILLIAM B. WILLIAMS et al., Appellants.

C. B. Conlin, L. J. Seay, Bayard R. Rountree and Rosecrans & Emme for Appellants.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

CRAIL, P. J.—Appellants have taken this appeal from judgments of conviction on one count of conspiracy to commit an assault and another count of assault with a deadly weapon, and from an order denying a motion for a new trial.

The evidence discloses that at the time when the acts charged in the information were committed, the automobile salesmen's union was conducting a strike at the Thompson Nash Company in Los Angeles, which strike was being partially financed and otherwise aided by the teamsters' union. Appellant Lyndes was an official in the salesmen's union and the other appellants were members of the teamsters' union.

On the evening of December 22, 1937, one Hogue, a salesman for the Thompson Nash Company, who had refused to go out on the strike, was struck on the head as he was about to enter an apartment house shortly after leaving his place of employment. An eyewitness testified that Hogue's assailant was a negro who resembled appellant William B. Williams and who wielded a baseball bat in making the assault. Hogue, who was rendered unconscious by the blow, testified that just prior to the assault, as he was parking his car in front of the apartment, a 1931 Ford Victoria coupe, occupied by

two negroes stopped immediately behind him; that the two negroes were quite similar in appearance to appellants, William B. Williams and Roscoe Williams. A 1931 Ford Victoria coupe, owned by Roscoe Williams, was identified by Hogue as closely resembling the car that he had seen on the night of the assault. Hogue further identified a tan coat belonging to William B. Williams as being very similar to the coat worn by one of the two negroes whom he had seen that night. Police officers found a baseball bat in the home of William B. Williams, the presence of which was explained by conflicting stories. A spot of blood was discovered upon the bat, but experts were unable to determine whether or not it was animal or human blood.

On December 10, 1937, William B. Williams caused an automobile which he was driving to collide with a motorcycle which was being operated by the complaining witness, Edmond Hartup, who at that time was employed by the Thompson Nash Company. At the time of the collision, Williams grabbed Hartup and threatened to kill him.

The charges against George W. Evans, one of the defendants in the trial below, were dismissed and he thereafter testified as follows on behalf of the prosecution: That he was formerly an employee of the Thompson Nash Company, but that during all of the times herein mentioned was out on a strike, acting as one of the pickets. Appellant Naylor, with whom Evans was quite friendly, was in charge of the picket line. On one occasion, at the request of Naylor, Evans drove Naylor to the home of William B. Williams. Naylor, going into the house alone, returned with William B. Williams and the three returned to the picket line. During the return trip, Williams stated that he had overturned a truck in a previous strike and otherwise boasted of similar acts which he had performed and of the fact that it was difficult to identify him because of the similarity in the appearance of negroes. During the three days subsequent to the assault on Hogue, William B. Williams called Evans several times and asked whether or not appellant Lyndes had left any money for him. On the night of the assault, William B. Williams and another negro who looked very much like Roscoe Williams drove up in a 1931 Ford Victoria coupe and inquired of Evans if Lyndes had left any money for William B. Williams; that the latter, who at that time had in his possession a bat

similar to that which was later found at his home, made the statement that, "We have got to do a job tonight." During the same evening, at a time when the salesmen were going home, Evans saw the same two negroes in the Victoria coupe in front of the Thompson Nash Company; that when Hogue left to go home, the men in the Victoria coupe started to follow the car in which Hogue was riding. A few days after the assault on Hogue, Lyndes gave William B. Williams a check for $9 and promised to give him $5 in a few more days.

A memorandum containing the names and addresses of Hogue and another strike breaker was found on the person of Naylor, who admitted that he intended to take some action against the two and that Lyndes has instructed him "to get somebody to fix Norman (another strike breaker) up", and that in accordance with the instruction, he got William B. Williams "to slap him (Norman) down". As a matter of fact, Norman was never assaulted. It further appears that acts of sabotage were committed upon Hogue's automobile with the consent and approval of Naylor.

Appellant Lyndes admitted that he had paid William B. Williams the sum of $10 within five days after the assault on Hogue and that he had promised him an additional $5, claiming, however, that this money was for gasoline and other expenses incurred by Williams. Lyndes stated that when a portion of this money was paid to William B. Williams, another negro who looked like Roscoe Williams was present. Lyndes was aware and approved of the fact that William B. Williams was employed by the teamsters' union and that he had been hired "to do the dumping and rough stuff", as well as, "to fix somebody up".

■ As a basis for their claim that the evidence is insufficient to support the verdicts, appellants contend that the witness Evans was an accomplice as a matter of law and that there was insufficient corroboration of his testimony to establish the conspiracy. This question was one which was within the province of the jury to decide (*People* v. *Compton,* 123 Cal. 403 [56 Pac. 44]) and, since proper instructions on this subject were given by the court, we must conclude that the jury by its verdict found that Evans was not an accomplice. (*People* v. *Seiffert,* 81 Cal. App. 195 [253 Pac. 189].)

■ In our consideration of the contention that the evidence is insufficient to support the verdicts, we are bound to

resolve all intendments in favor of upholding the judgment of the trial court and accordingly must view the evidence in the light most favorable to the respondent herein. (*People* v. *Shannon,* 28 Cal. App. (2d) 677 [83 Pac. (2d) 302].) Examining the evidence in this light, we are of the opinion that there is substantial evidence to support the verdicts.

Appellants contend that it was error for the court to admit evidence of the payment of money by Lyndes to Williams at a time subsequent to the assault on Hogue, on the theory that the conspiracy terminated at the time of the assault. With this contention we are unable to agree, for it clearly appears that the conspiracy was not one to commit a single assault but rather to commit a series of assaults and other intimidating acts against strike breakers during the continuance of the strike. The strike was still in progress at the time of the payment of the money. In the case of a continuing conspiracy, evidence of acts committed after the perpetration of the principal crime for which accused is being tried is admissible where, as in the instant case, such acts appear to be in furtherance of the general plan of the conspiracy. (*People* v. *Schmidt,* 33 Cal. App. 426 [165 Pac. 555] ; *People* v. *Sampsell,* 104 Cal. App. 431 [286 Pac. 434].)

Certain appellants claim that various exhibits introduced in evidence (including the baseball bat, various notes and memoranda found in the possession of some of the defendants) were inadmissible as against them because they were discovered by the police at a time subsequent to the assault on Hogue and therefore, appellants argue, after the termination of the conspiracy. Our disposition of the preceding point sufficiently answers this contention.

The appellants Williams have raised the point that testimony of certain admissions and confessions of the other conspirators made some months after the assault on Hogue was inadmissible as against them because such admissions and confessions were made after the termination of the conspiracy. This would be true had the testimony been admitted against them, but it was not. When the testimony was given, it was admitted only as against the person making the admission or confession. At the close of the trial the prosecution moved that all testimony of any conversations, acts, etc., of any of the defendants *up to the date of the assault on Hogue* be admitted as against all of the defendants. This motion was

granted, the court stating specifically that any admissions or confessions made subsequent to that date would be considered only as against the defendant making such statements. The point is not well taken. This likewise disposes of the objection of these appellants to the refusal of the court to grant their motion to strike the above evidence, since it was never admitted against them.

The contention of appellant Lyndes that evidence of the statements and admissions of the other appellants was inadmissible against him for the reason that there was no other evidence connecting him with the conspiracy is without merit. Elsewhere in this opinion we have concluded that there was sufficient evidence to connect all of the appellants with the conspiracy and have set forth the evidence rather fully. We see no reason to change that conclusion with regard to Lyndes. This being so, all of the statements, admissions and acts of the other conspirators relating to the conspiracy were admissible against Lyndes. (*People* v. *Schmidt, supra.*)

During the course of the trial the court made an order remanding Lyndes to custody. This action is now assigned as error. Neither the argument on the prosecution's motion to remand to custody, nor the order thereon was made in the presence of the jury. That the court had the power to make such an order is beyond question. (Pen. Code, sec. 1129.) While it is true that the court may abuse its discretion in making such an order, appellant has failed to point out, and we have been unable to find any abuse of discretion which would amount to prejudicial error.

The refusal of the court to give certain requested instructions is assigned as error. An instruction to the effect that Evans was an accomplice as a matter of law was reques'ed and refused. Elsewhere in this opinion we have held that Evans was not an accomplice as a matter of law, therefore the instruction was properly refused.

An instruction relative to the right of union labor to strike, picket and declare a boycott was properly refused. In fact, the court did instruct the jury on that subject, but since no issue was presented as to the right of union labor to strike, picket or declare a boycott, appellants were not entitled to an instruction on that subject. (*People* v. *Shannon, supra.*) The instruction given was in no way prejudicial.

■ By no stretch of the imagination could the appellants Williams have been prejudiced by the refusal of the court to instruct the jury that it was not to be influenced by the fact that they were negroes; nor could they have suffered prejudice by the refusal of the court to give an instruction to the effect that they were men of good moral character, 'for such trait was not in issue and no evidence thereon was offered. The evidence which was offered was on the issue as to their reputation for peace and quiet.

■ Instructions upon the following subjects were requested and refused: Corroboration of testimony of an accomplice, reasonable doubt, circumstantial evidence and that the testimony of William B. Williams was to be considered by the same rules as that of any other witness. These subjects were fully and adequately covered in other instructions which were given by the court, and therefore there was no error in refusing to give the requested instructions.

For the foregoing reasons the judgments and orders appealed from are affirmed.

Wood, J., and McComb, J., concurred.

A petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on January 26, 1939.