[Crim. No. 2412.   First Dist., Div. One.   Dec. 9, 1946.]

THE PEOPLE, Respondent, v. ANDREW TANNER,
Appellant.

Andrew Tanner, in pro. per., for Appellant.

Robert W. Kenny, Attorney General, Miriam E. Wolff, Deputy Attorney General, Ralph E. Hoyt, District Attorney, and Folger Emerson, Assistant District Attorney, for Respondent.

PETERS, P. J.—Appellant was charged with robbery and kidnapping for the purpose of robbery. He was tried by the

court without a jury and found guilty of both offenses. He appeals from the order denying his motion for a new trial and from the judgment of conviction. At the trial he was represented by the assistant public defender; on this appeal he appears *in propria persona*.

█ The testimony of the complaining witness, Layton D. Painter, amply supports the conviction. He testified that on November 13, 1945, he was living in Berkeley with his mother. He was then in the Army, having suffered a concussion of the back and shrapnel wounds in the legs. On that evening he attended a movie in Oakland. After leaving the show he had a couple of drinks and between 11 and 11:30 p.m. he was walking north on Broadway between 13th and 14th Streets on the west side of the street. He testified that as he was walking near the curb a two-door Ford sedan in which the appellant was riding stopped; that appellant got out, grabbed him by the arm and pulled him into the automobile; that he was then pulled into the back seat over the front seat; that he tried to resist but, because of his physical condition, he could do little about it; that the appellant held him down by both arms on the back seat; that he could clearly see appellant; that at no time did he recognize the driver; that he was then taken to San Francisco; that the car did not stop until it reached a residential zone in San Francisco; that then appellant reached into his, Painter's, pocket and removed his wallet; that appellant took $81 in cash and a check for $67.88 from the wallet and returned the wallet to him; that this was done without his consent; that appellant then put him out of the car and the car drove off; that he took the license number.

On cross-examination he testified that no one else was on the sidewalk between 13th and 14th Streets on Broadway, on the west side, at the time in question; that he had never been across the Bay Bridge before; that he did not know if any automobiles passed them; that as he lay on his back he saw orange colored lights for ten or fifteen minutes; that he did not remember the car stopping to pay the toll; that after he was put out of the car he met two women who told him that he was on Mission Street and who directed him to a cigar store at 16th or 17th and Van Ness where he could telephone; that he called the San Francisco police from that store and a sergeant of police came down and gave him some money to get back to Oakland. It should be here noted that he did not tell the sergeant that he had been robbed, and no explanation ap-

pears as to why he did not do so. No witness was called from the San Francisco police department to verify his story. He further testified that after the sergeant gave him the money he proceeded to the Terminal where he caught an "A" train for Oakland; that it was then about 1:30 a. m.; that he got off in Oakland and walked home to where he lived; that he arrived home at somewhere around 3 a. m.; that his mother let him in. His mother fixed the time of his arrival at 4 a. m. Later, about noon, on November 14, 1945, he reported the incident to the Oakland police and gave the police the license number of the car. Several days later, after appellant had been arrested, Painter identified appellant in a police line-up as his assailant. According to Painter and to the police there were seven men, all colored, in the line-up. Appellant testified that he was the only one in the line-up with an overcoat, and that the police officer in charge ordered him by name to remove the overcoat in the presence of Painter. The police officer testified that he had appellant remove the overcoat before Painter was in the room, and that this order was given out of the hearing of Painter. This conflict was, of course, for the trial court to determine. At any rate, at the trial Painter positively identified appellant as the man who kidnapped and robbed him.

After Painter had testified, the deputy district attorney asked leave to introduce the police court testimony of one Jessie Freeman Alexander who was then unavailable, being then in jail in Houston, Texas. The court twice asked counsel for appellant if there was any objection to reading this testimony. On the first occasion counsel stated: "No, Your Honor, none whatever," and on the second occasion he stated: "I expect to impeach it in about eight different ways, Your Honor; they can put it in so I can impeach it. I welcome the chance." The portion of the testimony of this witness thus read into the record shows that appellant was represented by counsel at the preliminary hearing, and that his counsel fully cross-examined Alexander. Alexander's testimony was to the effect that he was the owner of the Ford sedan in question; that he knew appellant and had known him for about six months prior to November 13, 1945; that prior to that date he had, on occasion, loaned his car to appellant; that at about 10 p. m. on November 13th, while he was in the company of his girl friend, Martha Brewer, he loaned the car to appellant and received $20 in return; that appellant returned the car at about 8:30 a. m. on the morning of November 14th; that at that time appellant

came to his room, where he, Alexander, was still in the company of his girl friend, to return the keys; that appellant told him that he wanted him to pick up his wife and then go to court, and wanted Alexander to drive him down; that the appellant's wife refused to go with them; that they then drove to either 14th and Washington Streets or 3d and Adeline Streets and appellant got out of the car; that this was about noon on the 14th. This witness testified that he had never seen Painter before until he saw him at the police line-up.

Alexander's testimony was contradicted in several respects by other witnesses. A court clerk testified that the records showed that appellant made a court appearance on November 15th on another charge, but that no appearance was made by him on the 14th. Martha Brewer testified that she knew both appellant and Alexander. She denied being in the company of Alexander on the evening of November 13th, and denied that she heard appellant ask Alexander for the use of his car on that date. She further denied that she and Alexander were in a room together on the morning of November 14th. She testified that, although she had been friendly with Alexander, she had nothing to do with him after November 10th.

A police inspector testified that Painter identified appellant in a police line-up of seven colored men on the morning of November 17, 1945, and that Alexander was also in that line-up. He contradicted appellant's version of the identification. He also testified that after Painter had identified appellant that appellant told him he had never seen Painter before in his life, and denied ever using Alexander's car. However, the next day, according to the officer, appellant told him an entirely different story. The story he then told, and which he also testified to at the trial, was as follows: That on the night of November 13th, he, the appellant, was gambling at a cafe in West Oakland; that he won some $600; that Alexander came into the cafe and told him that he had a soldier in his car and was going to San Francisco; that he wanted appellant to go; that appellant bought a pint of whiskey and proceeded to Alexander's car; that there he met Painter for the first time; that the three of them, with Alexander driving, proceeded to San Francisco; that there he bought some gas; that they drove to Post and Buchanan Streets and Alexander then told him to get out and drove away with Painter. At the trial he testified that Alexander and Painter left him in the car and walked away. At any rate, he told the officer, and at his trial

testified, that he arrived, alone, at the Terminal and got a train to Oakland about 5 a. m. and proceeded back to the cafe; that he there saw Painter talking to a girl, drinking whiskey, and trying to cash a check. He denied participating in any robbery or kidnapping.

On this testimony the court found the appellant guilty on both counts of the information. On this appeal it is first urged that the judgment is unsupported by the evidence. The above recital of the evidence obviously refutes that contention. The trial court was entitled to disbelieve appellant's testimony and to believe that of Painter. (*People* v. *Rose*, 26 Cal.App.2d 513 [79 P.2d 737]; Code Civ. Proc., § 1844.) The credibility of the witnesses was for the trier of the fact. This court cannot disturb a judgment based upon substantial evidence, even though that evidence may be contradicted.

It is next argued that robbery is an integral and required part of the kidnapping charge; that appellant cannot be lawfully charged and convicted of a robbery included within the kidnapping charge; that to do so subjects him to double jeopardy. The exact contention was decided adversely to appellant in *People* v. *Simpson*, 66 Cal.App.2d 319 [152 P.2d 339].

The appellant next urges that the record shows bias and prejudice against him by the trial judge. In this connection he points to a statement of the trial judge made at the time he, the appellant, waived a jury trial. At that time the trial judge informed appellant of the two charges against him and stated: ''These are two serious charges against you, and your lawyer has intimated to me you want to waive a trial by jury and be tried by the Court. Now, as far as I am concerned I would just as soon have you tried by a jury. You are not conferring any favor on me by asking for a court trial. If you want to waive a jury and have me try you I will give you as fair a trial as I know how. . . . You understand that? The defendant: Yes sir. The Court: You still want to be tried by the Judge? The defendant: Yes sir. The Court: You want me to try you and you waive a jury? The defendant: Yes sir. Mr. Shea: Counsel waives it.'' Far from showing any bias or prejudice the above statement indicates a very fair attitude on the part of the trial judge. He was very frank with appellant and his attitude is to be commended rather than criticized.

■ The other alleged indications of bias and prejudice relate to the court's comments on ruling on the evidence and in asking questions of the witnesses. We have read the entire record. We find no indication of any bias or prejudice on the part of the trial court. To the contrary, the record demonstrates that appellant was granted a fair trial. The various comments made and the questions asked by the trial judge were all justified by the circumstances of the case, and were made or asked in an attempt to get at the truth.

■ Appellant particularly objects to the introduction into evidence of the testimony of a police officer of the contents of a conversation between the police officer, Alexander and appellant relating to whether appellant had used Alexander's car. Appellant's counsel objected to the testimony on the ground of incompetency and offered to stipulate that defendant, Alexander and Painter were all in the automobile on the night of November 13th. The court properly held that the conversation was admissible. Such conversation was wholly in the presence of appellant and referred to an important element of the case.

■ The next point urged by the appellant is that the trial court committed prejudicial error in permitting Painter to testify in rebuttal although he remained in the courtroom in contravention of the order of the court excluding "the other witnesses" made while Painter, as the first witness, was on the stand. The violation of an exclusion order does not render the witness incompetent to testify, nor does it furnish grounds to refuse permission to testify. In fact, to refuse to permit such a witness to testify would be error. The witness who violates the order of exclusion may be guilty of reprehensible conduct, and such witness may be punishable by contempt, and such conduct may affect the witness' credibility, but it does not affect the admissibility of the evidence. (*People* v. *Duane,* 21 Cal.2d 71 [130 P.2d 123].) While the Duane case involved a witness for the defense it is obvious that the rule must apply to either a prosecution or defense witness.

■ The next contention of appellant is that it was error to admit the police court testimony of the witness Alexander. As already pointed out in the recital of facts, this testimony was admitted with the consent, twice expressed, of appellant's counsel. The theory of appellant is that in spite of such consent the admission of this evidence was error because the record does not show that he was present in the police court when

Alexander was examined. It is true that section 686 of the Penal Code provides that a defendant is entitled to be confronted with the witnesses against him except "that where the charge has been preliminarily examined before a committing magistrate and the testimony taken down by question and answer in the presence of the defendant, who has, either in person or by counsel, cross-examined or had an opportunity to cross-examine the witness" his preliminary examination may be read to the trial court in a proper case. It is true that the portion of the preliminary examination of Alexander here read into the record does not expressly show that appellant was personally present at that hearing, but it is equally true that it does not show that he was not present—in fact, all of the reasonable inferences are the other way. It is incumbent upon appellant to show error—this he has not done. The preliminary examination was on December 6, 1945. The record shows that appellant was arrested on November 17, 1945. Of even greater importance, the record shows that appellant's counsel cross-examined Alexander at length. ▋ Moreover, the right to be confronted by witnesses is one that may be waived by an accused. (See cases collected 7 Cal.Jur. p. 930, § 76.) Here there was an express waiver and consent by counsel for appellant. That is sufficient in most jurisdictions. (See cases collected 14 Am.Jur. p. 897, § 188.) No prejudicial error was committed in admitting this testimony.

▋ Appellant next contends that the trial court erred in not giving greater deliberation to the case. The record shows that immediately after argument the court rendered its decision. It is urged that failure to take the case under submission was error. The trial court is to be commended for its expedition. There were no complex law points involved. The case was tried in less than one day. The case turned primarily upon whether the appellant or the complaining witness was to be believed. The trial court undoubtedly made up its mind on the credibility of those two witnesses while they were testifying. This being so, the case was at an end. There was no need for further consideration.

None of the other contentions of appellant warrant discussion.

The judgment and order appealed from are affirmed.

Ward, J., and Schottky, J. pro tem., concurred.