[Crim. No. 4263. Second Dist., Div. Two. Nov. 24, 1948.]

THE PEOPLE, Respondent, v. GORDON ARMIN ASH
et al., Appellants.

822

Gerald Willis Myers and William M. Sarnoff for Appellants.

Fred N. Howser, Attorney General, and Dan Kaufmann, Deputy Attorney General, for Respondent.

MOORE, P. J.—Appellants were accused by information of robbery by the use of force. Having been convicted of robbery in the first degree they appeal from the judgment of conviction and from the order denying their motion for a new trial. They make six assignments of error.

### THE EVIDENCE IS SUFFICIENT

There is no lack of proof to support the verdict. At 1:10 a. m., February 11, 1948, the witness Skidmore was at work in the well-lighted office of a motel on Pacific Coast

Highway in Long Beach. On answering the doorbell Skidmore opened the top part of the ''Holland'' door and two men whom he later identified as appellants asked concerning a vacancy. On his statement that a vacancy for two persons was available they offered to register. Ash remained silent and kept his right hand in his left, inside coat pocket. When the witness inquired whether Ash had his hand on a gun and turned to reach for a key, Ash replied, ''Yes, this is a gun and this is a stick-up.'' At that time Ash was holding the barrel of his automatic within 18 inches of Skidmore's face while Moore was 2 feet from his victim. In compliance with Moore's demand to give them the money the witness handed him the bills and was thereupon ordered to give over the silver also, which the brigand promptly put into his coat pocket. The total amount taken from the cash drawer was $94.20, of which there were five silver dollars. After pocketing the money the men ordered Skidmore to put his hands up, shut the door and not to move for five minutes, and they then withdrew.

There is no contention that there was not a robbery committed. Appellants merely controvert the evidence of their identity as the two robbers.

Appellants and their confederate, one Sergeant Pierce, were connected with the Army air base at Long Beach. Appellants testified that on February 10, 1948, they left the air base in Pierce's automobile in the evening. Prior to their departure Ash drew base pay and travel expenses for the purpose of proceeding to Hamilton Field near San Francisco. His money consisted of two $20 bills, four $1.00 bills and 45 cents in change. He owned a German automatic which he had redeemed from a pawnshop on February 7. According to the admissions of appellants and Pierce they all knew that Ash carried the pistol. On leaving the base they proceeded to Lomita where Ash purchased a half pint of whiskey; thence to Torrance where they imbibed at four barrooms until about 10:30 p. m.; thence to Lakewood which is near the air base, and there they indulged in further bibulous behavior. Because Ash became drunk they ''drove around'' to sober him up, and were about to stop at a restaurant on Highway No. 101 when they were encountered by the officers. They testified that they were in a Lakewood barroom until 1:30 a. m. and there met three or four of their acquaintances.

When the Long Beach officers arrested the trio Pierce was driving with Ash sitting at his side. Moore occupied the rear

seat. After removing the men from the automobile the officers searched the car and found in the front seat a light blue hat, a fountain pen on the floor, and in back of the rear seat arm rest Ash's automatic; also, three $1.00 bills between the back seat and the right side panel. Upon the officer's arrival at the motel, Skidmore identified Moore and Ash and the hat which an officer took from the automobile and placed on Ash's head. Skidmore testified that at the time he was robbed Moore wore a herringbone sport coat and a yellow sport shirt. The officers testified that at the time of the arrest Moore was dressed in a brown sport coat or jacket, a yellow shirt and a brown sleeveless sweater with a vertical stripe on the front, and gray pants, and that Ash was dressed in a blue suit and a light tan sport shirt. Moore admitted at the trial that when he arrived at the police station he was clad in the garments described by the officers and by Skidmore. Officer Thornberry identified the hat found in Pierce's automobile and testified that it fitted Ash when placed on his head at the motel.

After the conference with Skidmore the officers removed the three men to the police station where they were searched. The following were taken from Ash's pocket: five silver dollars, a $20 bill, a $5.00 bill and three $1.00 bills. Twelve $1.00 bills were taken from Pierce.

The police held a line-up a few days subsequent to February 11 when Mr. Skidmore again identified Moore and Ash as the men who robbed him.

As further proof of the guilt of appellants as charged and as evidence of a common plan and design the prosecution made proof of the robbery of a second motel which took place less than an hour after the robbery of Skidmore and at a short distance from the latter's place of business. The second victim of the trio was the witness Hall who was operating a motel inn on the same highway and about 2 miles from the place of Skidmore's employment. His testimony was substantially as follows: Moore and Pierce entered the well-lighted inn and approached a counter which separated the living room from the outer office. When Moore asked for accommodations Hall laid a registration card on the counter and handed a fountain pen to Moore for his signature. In answer to an inquiry Moore replied that he would prefer twin beds and laid a $5.00 bill on the counter. As Hall attempted to reach for the key beneath his desk Pierce drew his gun and commanded him: "Never mind the key. We want your money. We mean

business.'' Further words passed and Hall made a dive for his own gun. Both intruders hastily departed. Hall then discovered that the $5.00 bill and card remained on the desk but his pen was gone. Hall definitely identified Moore and Pierce as his two callers. Also he identified his fountain pen retrieved from Pierce's automobile and declared that the gun found there resembled the automatic used by Pierce in the attempted robbery.

While there are slight discrepancies in the testimony there is nothing in them to overcome the jury's implied finding that appellants were the two men who robbed Skidmore. Ash's assertion that he wore no hat and that his automatic contained neither bullets nor clip, and Pierce's denial of knowledge of the fountain pen found in his automobile, and similar items of proof are not of such importance as seriously to question the verdict. Expert testimony proving that the automatic could be fired without a clip; presence of Hall's pen in the automobile at the time of the arrest and of three $1.00 bills concealed in the car; the light blue hat which fitted Ash; five silver dollars found in his pocket; the failure of appellants to produce any witness who could establish their alibi—such proof is sufficient support for the jury's verdict.

It is the function of the jury in the first instance and of the trial court on the motion for a new trial to determine the sufficiency of the evidence. A verdict so approved cannot be set aside on appeal unless it clearly appears that upon no hypothesis whatever is there sufficient substantial evidence to support it. (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778] ; *People* v. *Farrington,* 213 Cal. 459, 463 [2 P.2d 814].)

Not only does the rule which fixes the finality of the jury's finding apply to the commission of a crime but it applies likewise to the identification of the criminals. Lack of positiveness in identifying them does not destroy the value of the identification. (*People* v. *Waller,* 14 Cal.2d 693, 700 [96 P.2d 344].) Proof of identity is a matter for the jury's determination. Discrepancies in the testimony of two or more witnesses in describing the apparel of the accused or changes of, or conflicts in their testimony is a question for the jury. Especially are such matters of slight concern when the accused is positively identified. (*People* v. *Waller, supra; People* v. *Alexander,* 78 Cal.App.2d 954, 957 [178 P.2d 813].)

It is not necessary that the articles of wearing apparel of the criminals be positively recognized. (*People* v. *Farrington, supra; People* v. *White,* 44 Cal.App.2d 183, 185 [112

P.2d 60]; *People* v. *Addington,* 43 Cal.App.2d 591, 593 [111 P.2d 356].) ■ When confronted with unshaken testimony that he was a perpetrator of the crime for which he is being tried the accused must establish an alibi to the satisfaction of the jury or show that such testimony is inherently improbable. (*People* v. *Braun,* 14 Cal.2d 1, 5 [92 P.2d 402].) In the Braun case the victims had limited opportunities to observe their assailants and the testimony of each was weakened by subsequent inconsistencies. Nevertheless, the jury acted within the scope of its office in accepting the testimony and in rejecting that of the defendant and his witnesses. ■ Whether a witness' belief as to the identity of the accused is sufficient evidence is for the jury's determination. (*People* v. *Deal,* 42 Cal.App.2d 33, 36 [108 P.2d 103].) ■ But whether the finding is based upon the belief of the prosecution witness or upon inconsistent testimony it is fortified when the trial court denies the motion for a new trial. (*People* v. *Best,* 43 Cal.App.2d 100, 103 [110 P.2d 504].) In view of the foregoing authorities, criticism of the testimony of the State's witnesses concerning the hat of Ash and the yellow shirt of Moore are of slight concern. ■ Aside from the recovery of Hall's fountain pen and the moneys taken from Skidmore, the positive identification of appellants would have been sufficient to support the verdict. (Code Civ. Proc., § 1844; *People* v. *Tanner,* 77 Cal.App.2d 181, 186 [175 P.2d 26].)

The only defense presented by appellants was an alibi. While they consistently maintained that throughout the evening of February 10 they were driving around either to visit barrooms or to arouse Ash from his stupor, they presented not one witness to prove their presence at any place. Not a single liquor dispenser was called. ■ The establishment of an alibi is likewise solely for the determination of the jury, and their verdict rejecting proof thereof will not be upset where substantial evidence contradicts such proof. (*People* v. *D'Elia,* 73 Cal.App.2d 764, 767 [167 P.2d 253].)

### No Error in Allowing Skidmore to Identify Pierce

■ Neither the ruling of the court in permitting Skidmore over objection to identify Pierce as one of the trio returned by the officers to his motel after the robbery nor that which allowed Hall to identify Pierce as one of his assailants was error. Merely because Ash did not accompany Pierce and Moore when they called upon Hall, or because Pierce was not present with Moore and Ash when they visited Skidmore is no reason why the court should not admit evi-

dence to show a common scheme or plan of the three men, and to show that all three participated in two separate crimes. The theory of the prosecution on the trial was that the three soldiers had a common design or scheme to rob motels; to gain entry by pretending to the clerk in charge that the two actors desired accommodations; to use a revolver for the purpose of enforcing their demands for money; to drive from one motel to the other in the Pierce automobile. Proof of such common scheme is properly made by any evidence which tends logically and naturally to establish the plan. ▮ When the proof of a separate crime reasonably proves a material fact in the trial of the accused it is admissible even though it might tend to prejudice the accused. (*People* v. *Pette,* 28 Cal.2d 306, 315 [169 P.2d 924].) Both appellants admitted that they were in the company of Sergeant Pierce during the hours prior to 2 o'clock a. m. of February 11, 1948, that they were in his automobile at the very hour when Skidmore says he was robbed by appellants, and that they were with him until their arrest. So, also, did Pierce testify to substantially the same facts.

In view of such admissions on the part of all three, there could be no error in introducing the testimony of Hall that Pierce accompanied Ash when the two called upon him one hour after the robbery of Skidmore. This proof was further justified (1) by Hall's description of the gun wielded by Pierce as resembling that wielded by Ash in the robbery of Skidmore; (2) by the fact that Moore and Pierce approached Hall in the manner identical with that followed by Moore and Ash in the robbery of which they were accused, and (3) by the fact that within a very few minutes after the attempt upon Hall the three men were apprehended in Pierce's automobile. Hall's testimony was competent and pertinent proof that a conspiracy existed and that the trio left the air base with the common scheme, from which the jury reasonably inferred that appellants committed the crime of which they were accused.

The relevancy of Hall's testimony in identifying Pierce as his assailant arises from the conclusion that the circumstances, the testimony of the People's witnesses and the admissions of appellants and Pierce established a common design and plan to rob motels. (*People* v. *McMonigle,* 29 Cal.2d 730, 741 [177 P.2d 745].) ▮ It is proper to show upon the trial of a person accused of robbery that the evidence of another and a different robbery or attempt to commit the crime was in

furtherance of a conspiracy to commit a series of such acts of which the one on trial is one. (*People* v. *Sampsell*, 104 Cal.App. 431, 438 [286 P. 434].) ▮ Proof of the actual meeting of the conspirators and of the words exchanged in reaching an agreement to commit a series of crimes is not essential to a finding of such conspiracy. It is sufficient if the circumstances reasonably satisfy the jury. (*Ibid.*) ▮ A conspiracy having been established the actions or declarations of any one of the conspirators before or after the offense are admissible against all. (*People* v. *Williams*, 30 Cal.App.2d 234, 240 [85 P.2d 974].) ▮ Any evidence which may illuminate the facts of the transaction under investigation is admissible, and in determining the relevancy of other crimes wide discretion is left to the trial judge. (*People* v. *Collier*, 111 Cal.App. 215, 236 [295 P. 898].)

ARGUMENT OF DISTRICT ATTORNEY NOT PREJUDICIAL

▮ The language of the prosecutor criticized is as follows:

"But taking the circumstances of these three motels, can it be any clearer than that they started out with the intention of robbing motels, and the court will give you an instruction upon which the reason for this testimony as to the attempted robbery of the Southern Motor Inn was admitted. It was admitted for the purpose of showing if it does show a manner or scheme on the part of those three persons to rob motels that night and also to show that at another time they had the means of committing the robbery for which they are here specifically charged, to wit: the robbery of Mr. Skidmore. So remember, you may consider the evidence as to the attempted robbery of the Southern Motor Inn only insofar as it may throw light upon the guilt or innocence of the defendants in this case."

Such language is neither prejudicial nor improper. It is a fair comment upon the evidence that the conspirators started out with the intention of robbing motels. It prophesied that the court would instruct the jury as to the reason for admitting proof of the common scheme. It was a fair observation that the evidence was for the purpose of showing a common scheme to rob motels and to show that on a separate occasion they had the means of committing the robbery for which they were on trial. The argument reminded the jury that they were to consider the robbery of the witness Hall or the inn where he worked only insofar as it threw light upon the

guilt of appellants of the crime of robbing Skidmore. There is nothing in the passage quoted calculated to incite passion or prejudice. Finally, there was no objection by appellants at the time, no motion to strike or for an instruction to disregard that part of the argument. ■ Failure to assign conduct or argument as error is deemed a waiver of objection to the argument. (*People* v. *Valcalda,* 188 Cal. 366, 376 [205 P. 452]; *People* v. *Goldstein,* 84 Cal.App.2d 581, 588, 589 [191 P.2d 102]; *People* v. *O'Moore,* 83 Cal.App.2d 586, 601 [192 P.2d 833].)

## No Error in Instructions Given

■ The first instruction criticized related to evidence received for the purpose of showing the common scheme of appellants and their confederate to rob motels. The purpose of the instruction* was to limit the application of such evidence. It was a direction to the jurors not to convict appellants of attempting to rob Hall but to confine the consideration of such evidence to the question of appellant's guilt or innocence of the robbery of Skidmore. A similar instruction given in *People* v. *Sampsell, supra,* was held to be harmless. In view of the fact that the jury are presumed to have understood and followed the instruction (*People* v. *Ruef,* 14 Cal. App. 576 [114 P. 48, 54]) it was free from error, if not in fact helpful to the jury.

■ Appellants next complain of two instructions given on the subject of dangerous or deadly weapons, contending that the instructions† were erroneous because the gun used

*"You are instructed that evidence has been received tending to prove that one of the defendants charged in the information, together with another person not on trial herein, attempted to commit the crime of robbery upon another person on or about the same date as the date the crime charged herein was alleged to have been committed. You are instructed that this evidence was received for the purpose of showing or attempting to show a plan or scheme on the part of said defendants to rob motels and also for the purpose of proving that said defendants had the means of committing the crime charged herein, to wit, an automatic pistol. You are not to consider this evidence for the purpose of convicting either of said defendants of said attempted robbery but only on the question of the guilt or innocence of said defendants upon the crime of robbery charged herein."

†"If you should find that the defendants committed the robbery as charged in the information and that at the time of the commission of the robbery either of them was armed with a dangerous or deadly weapon, the robbery would be of the first degree."

"To constitute a robbery as being one of first degree because the person committing it is armed with a dangerous or deadly weapon, it is not necessary that such weapon be used; and the degree of the crime is the same whether or not the weapon is concealed from view."

by appellants was incapable of being fired. It had no bullets in the chamber; the clip was missing and no bullets were found in the car. In answer to this attack it may be said that in view of the threats of the robbers to use the gun in their attempted robbery as well as on the occasion of their success the jury might reasonably have believed they carried a loaded gun and that the accused thereafter disposed of the cartridges. But even though it had not been loaded, neither all nor any of the facts recited rendered the automatic less than dangerous. If the gun had been unloaded it was still a dangerous weapon. When a gun is used to effect a robbery it is immaterial whether it is loaded or unloaded. (*People* v. *Coleman,* 53 Cal.App.2d 18, 28 [127 P.2d 309]; *People* v. *Ward,* 84 Cal.App.2d 357, 360 [190 P.2d 972]; *People* v. *Freeman,* 86 Cal.App. 374, 376 [260 P. 826].) Although if unloaded it may in and of itself be comparatively harmless, yet in view of the circumstances and the present ability of the assailant to use it in a dangerous manner it may be dangerout. (*Ibid.*; *People* v. *Raleigh,* 128 Cal.App. 105, 108 [16 P.2d 752].) In the Ward case the jury determined and the court held that even a toy pistol is a dangerous weapon where it is made of metal. In *People* v. *Freeman* an unloaded pistol was held to be dangerous because although at the time it was pointed at the victim the assailant was fully 10 feet distant, yet within a brief interval he could have used it as a club, thereby rendering it dangerous.

In *People* v. *Raner,* 86 Cal.App.2d 107, 111 [194 P.2d 37], cited by appellants the court in discussing the degree said that to fix it as of the first degree, it is not necessary that the weapon should be deadly if in fact it is dangerous. (Pen. Code, § 211a.) Displaying an unloaded pistol may be robbery of the first degree. ██ Appellants also cite *People* v. *Sylva,* 143 Cal. 62 [76 P. 814]; *People* v. *Bennett,* 37 Cal. App. 324, 326 [173 P. 1004]; *People* v. *Montgomery,* 15 Cal. App. 315, 316 [114 P.2d 792], to show that where there is no attempt or threat to use an unloaded gun as a bludgeon it cannot be considered as a deadly weapon. In each of these decisions the crime charged was assault with a deadly weapon. In such a charge the gravamen of the alleged assault is the attack. This distinction renders the cases cited inapplicable to the crime of robbery. But where a dangerous or deadly weapon is employed by a robber to enforce his demands it is immaterial whether it was used or exposed to view. (*People*

v. *Raleigh, supra,* 109; *People* v. *Hall,* 105 Cal.App. 359, 361 [287 P. 533].)

### No Error in Rejecting the Proffered Instruction

█ It is contended that the court erred in refusing to give the following instruction: ''An empty revolver merely pointed at a person, and not used to strike him with, is neither a dangerous nor a deadly weapon, however much the person at whom it is pointed may be put in fear.'' The above discussion of the instructions given and the authorities cited dispose of this contention. Substantially, the only authority relied upon by appellants is a concurring opinion filed in *People* v. *Seawright,* 72 Cal.App. 414, 420 [237 P. 796], which contained the proposed instruction. Suffice it to say that after the Seawright decision no appellate court has followed the concurring opinion. The prevailing opinion in that case distinctly holds that an unloaded revolver in the hands of a person intent upon committing a crime is a dangerous weapon. It recognizes the distinction between using an unloaded revolver in an armed robbery and in an assault with a deadly weapon.

### Denying a New Trial—Not Error

The final contention of appellants is that the court erred in denying their motion for a new trial. In view of the above résumé of the evidence and of the authorities upon the question of the use of an unloaded gun in the commission of a robbery and of the competency of the evidence admitted to prove a common plan, further discussion of the last assignment is unnecessary.

The judgment of conviction and the order denying the motion for a new trial are affirmed.

McComb, J., and Wilson, J., concurred.