[Crim. No. 3241.   First Dist., Div. Two.   Nov. 27, 1956.]

THE PEOPLE, Respondent, v. EDWARD H. GOLDSTEIN, Appellant.

Morris Oppenheim for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, John S. McInerny and N. J. Menard, Deputy Attorneys General, for Respondent.

THE COURT.—Appellant was found guilty by a jury on both counts of an information, the first of which accused him of attempted violation of Penal Code, section 288a, committed on or about November 1, 1953, with Billy Hoss, and the second violation of section 288a committed on the same date with John Ritesman, and was sentenced to San Quentin, the sentences to run concurrently. He appeals from the judgment on both counts asserting mainly with respect to the first count

that there was no evidence of facts constituting a punishable attempt to commit the alleged offense, nor that any such act was committed about November 1, 1953, and with respect to the second count, that he was convicted on uncorroborated evidence of one or two accomplices.

The only accusatory evidence was the testimony, to the following effect, of Hoss and Ritesman. In November 1953, Hoss was 20 and in the Navy, Ritesman a cement mason of 22 out of work. Both testified that about November 1, 1953, they together visited defendant after midnight at his home in Los Altos following an appointment made by telephone. Hoss testified that he had been there several times before and that he was friendly with defendant, Ritesman that he had once before seen defendant when somebody showed defendant's home to him, but that he did not know him personally. They were received by defendant in his living room. There was nobody else present. Hoss introduced Ritesman to defendant. They had some conversation and drinks and then defendant said he wanted to talk to Bill (Hoss). Hoss went with him into a bedroom. Hoss testified that defendant asked him about Johnny (Ritesman). In the course of the conversation he asked questions which Hoss understood to mean whether Ritesman would consent to anything. Asked whether he knew a short word for homosexual acts, he said that he had heard it as a ''blow job''; that he did not remember that defendant had said it like that, but that the way it was put was if he would consent. Hoss answered that he did not know and that he would have to find out for himself. When asked what defendant did with respect to Hoss himself he said: ''Well, one time he kind of got a little funny with me, you know, patting my legs, and, you know, tried to play around and everything. He was going up my leg; in other words like I was a girl and had intentions.'' Hoss moved away and told him that he didn't like any of that sort of thing. On cross-examination Hoss testified that this patting and the rebuff had not taken place the evening when he visited defendant with Ritesman, but the first time he visited defendant to swim in his pool in the summer of 1952. When Hoss and defendant came back to the living room they had another drink and then defendant said he would like to talk to Ritesman. They went into the bedroom and there and then, according to the testimony of Ritesman, the offense took place. Ritesman first resisted somewhat but when defendant persisted he gave way voluntarily and accepted $10 from defendant before they went back to

the living room. According to Hoss, defendant and Ritesman stayed away half an hour or more. Hoss testified that when they left defendant gave him also $10 or $15. It was brought out in the cross and redirect examination of Hoss, that Hoss and Ritesman went there because they were broke and needed some money. Hoss told Ritesman that he would probably get some money and why. When Hoss phoned defendant that he was coming, defendant asked him whether he was going to bring somebody with him. ''I said probably, because before I always brought somebody with me. I didn't want to go alone and that was the deal.'' One of the reasons given why he did not wish to go to defendant alone was that then he would have to fight all day to stay away from him. Defendant paid him to come up there. ''I mean he figured if I came there would be some other guys.'' It was quite a long time ago that a boy had introduced him to defendant. Since that time he had made many a trip to defendant's house with sailors from Moffett Field and such boys, and nearly every time he went he got money. He denied, however, that there was an understanding that he was supposed to receive money for bringing the boys up there. He did not know whether anything wrong or ungentlemanlike went on there, although there were a few remarks made and everything. He didn't speak to Ritesman about a blow job or such. Ritesman also denied that any such thing had been discussed with Hoss. Defendant took the stand, confirmed the visit of the boys in the living room but denied everything else. A sister-in-law of defendant testified that since October 5, 1953, until some time in 1954 she had been living at defendant's house with her three children; that they occupied both bedrooms and during that period were never absent at night. Defendant slept in a trailer.

It is undisputed that Ritesman, who voluntarily consented, was an accomplice (*People* v. *Ellis*, 137 Cal.App.2d 408, 413 [290 P.2d 266] ; *People* v. *Battilana*, 52 Cal.App.2d 685, 695 [126 P.2d 923]) and that under Penal Code, section 1111, his testimony required corroboration. The court so instructed the jury. Appellant contends that the testimony of Hoss was insufficient as corroboration because it required the interpretation and direction of Ritesman's testimony in order to give it value and because Hoss himself was an accomplice having aided and abetted the commission of the act with Ritesman as a procurer. ▮ It is true that the corroborative evidence must be in itself of an inculpatory character without

the aid of the testimony which is to be corroborated. (*People* v. *MacEwing*, 45 Cal.2d 218, 225 [288 P.2d 257]; *People* v. *Garrison*, 80 Cal.App.2d 458, 461 [181 P.2d 738].) However, such is the case with the testimony of Hoss apart from the question whether Hoss himself was an accomplice. ■ The corroborative testimony that after midnight defendant received in his home a young man he concededly did not know, together with a mutual friend, that he asked that friend in veiled terms whether the man would consent to homosexual acts, that he thereafter took the unknown young man to a bedroom and stayed there with him for half an hour or more leaving the friend alone, and that when the friend left he gave him 10 or 15 dollars is clearly inculpatory independent of any further evidence. ■ It does not show exactly what act took place in the bedroom, but the corroborating evidence need not establish the actual commission of the offense, the corpus delicti. (*People* v. *Yeager*, 194 Cal. 452, 473 [229 P. 40]; *People* v. *McNamara*, 103 Cal.App.2d 729, 740 [230 P.2d 411].) ■ It is sufficient that it tends to connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the witness, who must be corroborated, is telling the truth. (*People* v. *MacEwing, supra*, 45 Cal.2d at p. 224.) The distinction from *People* v. *Robbins*, 171 Cal. 466 [154 P. 317], on which appellant relies, is illuminatory. There the corroborating evidence was only that the defendant and the boy, his alleged accomplice in the sex violation, after a game of tennis went to a bathroom, locked the door, pulled the frosted glass window down and let the water run. The court held that there was nothing unnatural or suspicious in this testimony which could well relate to just washing up after a game. The same can certainly not be said of the corroborative evidence in the case before us.

However, a serious question is presented by appellant's contention that Hoss himself was an accomplice. ■ The testimony of one accomplice cannot corroborate that of another. (*People* v. *Clapp*, 24 Cal.2d 835, 837 [151 P.2d 237] and cases there cited.) An accomplice, defined in Penal Code section 1111 "as one who is liable to prosecution for the identical offense charged against the defendant on trial in the cause in which the testimony of the accomplice is given," includes "all persons concerned in the commission of a felony, whether they directly commit the act constituting the offense, or aid and abet in its commission, though not present." (Pen. Code, §§ 971, 31.) ■ In this connection to aid and abet

means to instigate, encourage, promote or aid with guilty knowledge of the wrongful purpose of the perpetrator. (*People* v. *Johnson,* 99 Cal.App.2d 717, 732-733 [222 P.2d 335]; *People* v. *Best,* 43 Cal.App.2d 100, 105 [110 P.2d 504].) Accordingly, it has been held that a person who procured opportunity for a sex crime (statutory rape) by providing a room with knowledge of the illegal purpose for which it was to be used, aided and abetted the crime and was punishable as a principal. (*People* v. *Wood,* 56 Cal.App. 431 [205 P. 698].) ▆▆ The aider and abetter is not only guilty of the crime the contemplated commission of which was known to him, but also of the natural and reasonable or probable consequences of the acts which he knowingly aided or encouraged. (*People* v. *Beltran,* 94 Cal.App.2d 197, 206 [210 P.2d 238]; *People* v. *Etie,* 119 Cal.App.2d 23, 28 [258 P.2d 1069]; *People* v. *King,* 30 Cal.App.2d 185, 202 [85 P.2d 928]; *People* v. *Simpson,* 66 Cal.App.2d 319, 328 [152 P.2d 339].), "Whether the act committed was the natural and probable consequence and the extent of the defendant's knowledge are questions of fact for the jury" (*People* v. *Beltran, supra, People* v. *Etie, supra*). In the present case, considering the conflicts in the evidence, Hoss cannot be held an accomplice as a matter of law. However, a jury could have found on the evidence that Hoss was an accomplice, a principal as an aider and abetter of the offense committed with Ritesman. The jury could infer from the testimony of Hoss that there was a probably tacit "deal" between defendant and Hoss that Hoss would be given money if he brought boys or young men to defendant's home, and that Hoss knew that defendant did so to have the opportunity to commit lewd acts with them, which, if they did not rebuff him and fight him continually, would probably extend to violations of sections 286 or 288a of the Penal Code, and that Hoss brought Ritesman there with that knowledge. Even if the acts would not go so far they would still be illegal and would stamp defendant a vagrant as a lewd and dissolute person under Penal Code, section 647, subdivision 5. It may be noted in this respect that vagrancy under said subdivision was held to be an included offense of that of Penal Code, section 286 (*People* v. *Babb,* 103 Cal.App.2d 326 [229 P.2d 843]), and that it then would also be included in the offense of section 288a.

▆▆ If sufficient instructions on the subject had been given it would have been concluded from the verdict that the jury found that Hoss was not an accomplice. (*People* v. *Wil-*

*liams,* 30 Cal.App.2d 234, 239 [85 P.2d 974] ; *People* v. *King, supra,* 30 Cal.App.2d at p. 197.) However, the instructions were insufficient to guide the jury with respect to the possible complicity of Hoss. No instruction was given that the evidence of an accomplice cannot corroborate that of another, although it was proposed by defendant; no instruction on the rule that one who aids and abets is punishable as a principal, nor any other instruction on aiding and abetting was given. "It is incumbent upon a court in a criminal case to instruct the jury of its own motion, charging them fully and fairly upon the law relating to the facts of the case. (Citations.) The court is not relieved of the duty to give instructions whose necessity is 'developed through the evidence introduced at the trial.' (Citations.) An instruction is necessary if it is vital to a proper consideration of the evidence by the jury. (Citations.) Accordingly, it has been held that the court must of its own motion instruct the jury in criminal cases with respect to accomplices and their testimony." (*People* v. *Putnam,* 20 Cal.2d 885, 890 [129 P.2d 367] ; *People* v. *Buffum,* 40 Cal.2d 709, 724 [256 P.2d 317] ; *People* v. *Davis,* 43 Cal.2d 661, 673-674 [276 P.2d 801] ; *People* v. *Ellis,* 137 Cal.App.2d 408, 414 [290 P.2d 266].) The failure of the court to give instructions vital to the consideration of the complicity of Hoss as to the second count must lead to reversal of the judgment on that count. If both witnesses are considered accomplices, their admitted visit at night in defendant's living room and Ritesman's knowledge of the existence of a bathroom on which the People rely as corroboration are clearly insufficient because they are not in themselves inculpatory or unnatural. (*People* v. *Robbins, supra.*)

With respect to the first count the lewd acts testified to by Hoss and stated before are not specific enough to constitute an attempt to commit the offense of Penal Code, section 288a. ■ "In order to establish an attempt, it must appear that the defendant had a specific intent to commit a crime and did a direct, unequivocal act toward that end; preparation alone is not enough, and some appreciable fragment of the crime must have been accomplished." (*People* v. *Gallardo,* 41 Cal. 2d 57, 66 [257 P.2d 29]. In that case it was held that payment of $250 after arrangement for an abortion and preparation of hospital cards and records were insufficient to support conviction of attempts to commit abortions because no means to procure a miscarriage had yet been employed. In *People* v. *Miller,* 2 Cal.2d 527, 531-532 [42 P.2d 308], a similar rule

as the one quoted above is explained because in the majority of cases the conduct of a defendant, consisting merely of acts of preparation has not ceased to be equivocal irrespective even of a declared intent. "It is that quality of being equivocal that must be lacking before the act becomes one which may be said to be a commencement of the commission of the crime, or an overt act, or before any fragment of the crime itself has been committed, and this is so for the reason that so long as the equivocal quality remains no one can say with certainty what the intent of the defendant is. As stated in *United States* v. *Ford,* 34 Fed. 26, 27, 'the intention of the actor can alone be clearly ascertained by the movements which he had made to complete his design.' " ▮ The lewd acts with respect to Hoss, to which Hoss testified were of too preparatory and equivocal a character to constitute an attempt to commit a fellatio under the above rule. In cases in which an attempt to commit a sex crime was found the acts had progressed much further. (*E.g. People* v. *Gleason,* 99 Cal. 359 [33 P. 1111, 37 Am.St.Rep. 56] ; *People* v. *Jensen,* 76 Cal.App. 558, 562 [244 P. 1086].) The judgment of conviction on the first count must also be reversed. As the facts are insufficient to constitute a punishable attempt, we need not decide whether the evidence as to the time of the alleged acts would prevent defendant's conviction on this count.

Appellant also predicates error on the court's overruling of his objection to a question whether the defendant knew a short term used for homosexual acts and its permitting him to testify that he had heard it as a "blow job." We find no error nor possibility of prejudice. The question was clearly introductory and Hoss further testified in that respect only that he did not know that defendant had used the word and that he, Hoss, had not spoken about such things with Ritesman.

▮ The instruction on the subject of flight immediately after the commission of a crime should not have been given as there was no evidence that defendant left immediately after the commission of the acts of which he was accused or even after they were found out. The only evidence was that he left on a prolonged vacation a year after the acts and that the attention of the police was first called to the matter in connection with a theft at his home which took place after he had left. He had been in Mexico for a month when the first accusation was filed on January 3, 1955. It is conceded that the only attitude which could be held against

him is that he did not immediately come back when he heard that the authorities wished to interrogate him. Such cannot correctly be described as flight. Whether the error was reversible notwithstanding the express statement of the court that it did not say whether there was flight or not need not be decided as the judgment must be reversed at any rate on the grounds stated before.

Judgment reversed.

A petition for a rehearing was denied December 12, 1956, and respondent's petition for a hearing by the Supreme Court was denied December 27, 1956.